15 So.2d 561

**NIXON v. NIXON et al.**

**7 Div. 730.**

Supreme Court of Alabama.

Oct. 7, 1943.

Rehearing Denied Dec. 2, 1943.

Erle Pettus, of Birmingham, and Rutherford Lapsley, of Anniston, for appellant.

Merrill, Woolf, & Merrill, of Anniston, for appellees.

BOULDIN, Justice.

This appeal is from a final decree denying relief to complainant—appellant—on her bill of review, or bill in the nature of a bill of review, seeking to vacate a decree in a former equity suit between the same parties.

The controlling facts, briefly outlined, are:

On September 8, 1936, complainant sold and conveyed to her brothers and sisters her interest in the estate of her father, W. D. Nixon, deceased, and of her mother, Nancy J. Nixon, deceased, at and for the sum of $10,000, payable $2,000 cash, and $8,000 evidenced by the note of the grantees, payable $50 per month without interest. The cash payment was made, and deferred instalments paid as agreed.

On February 23, 1939, complainant filed her bill to rescind and cancel the deed upon the ground that she had been over-reached by persons standing in confidential relations; had, by fraud and undue influence, been induced to part with her property at less than its fair value; and in particular had been induced by misrepresentation to accept the note carrying no interest on deferred payments.

The case being at issue on amended bill and answer, came on for trial before Judge Carr. Evidence was taken for some days. Pending the trial, an agreement in writing, signed by parties and their counsel, was presented to the court disclosing an agreed settlement to be entered as a consent decree.

Thereupon, on July 15, 1940, a decree was entered reciting: "This cause coming on to be heard is submitted for final decree upon the bill of complaint in this cause, the answer of the respondents and the agreement between the parties approved by their attorneys, which agreement is this day filed in the cause. And it appearing to the court that the provisions of said agreement this day filed in this cause are fair and just, it is therefore ordered, adjudged and decreed by the court

that said agreement be and it is hereby in all respects ratified and confirmed."

The decree, in consonance with the agreement, proceeded:

"It is further ordered, adjudged and decreed that respondents, Hubert William Nixon, Elsie Nixon Bryan, Herman Clarence Nixon and Cadie Myrtyl Nixon Cranston, pay to the complainant, Mamie Ethel Nixon, the sum of two thousand, one hundred seventy-two and 49/100 dollars ($2172.49) payable as follows: One thousand dollars ($1000.00) in cash and the remainder, eleven hundred seventy-two and 49/100 dollars ($1172.49) to be paid in successive monthly installments of fifteen dollars ($15.00) each except the last payment which will be seventeen and 49/100 dollars ($17.49) commencing on the 1st day of August, 1940. Said deferred payments shall not bear any interest, except that any deferred payments overdue for a period of thirty days will draw interest at six per cent (6%) from the expiration of said thirty day period. Failure to pay any one of said installments within sixty days from the date the same is due will, at the option of the complainant, Mamie Ethel Nixon, cause the remainder of said deferred payments to immediately become due and payable.

"It is further ordered, adjudged and decreed that of said one thousand dollars payable in cash, six hundred dollars ($600.00) is to be paid to Ross Blackmon, attorney of record for complainant, in full settlement of all claims for attorney's fees which he has against the complainant, Mamie Ethel Nixon, and credit is to be given to that extent upon said amount ordered to be paid to complainant.

"It is further ordered, adjudged and decreed that the Anniston National Bank of Anniston, Alabama be and it is hereby appointed to act as trustee for complainant, Mamie Ethel Nixon, to administer all sums of money due and payable under the terms of the agreement this day filed in court between the parties to this proceeding and also all sums of money due and payable under the terms of that note or contract made by said Hubert William Nixon, Elsie Nixon Bryan, Herman Clarence Nixon and Cadie Myrtyl Nixon Cranston, to the complainant, Mamie Ethel Nixon, under date of September 1, 1936. Both of said agreements are hereby expressly ratified and confirmed.

"It is further ordered, adjudged and decreed that that certain deed executed by complainant, Mamie Ethel Nixon, to Hubert William Nixon, Elsie Nixon Bryan, Herman Clarence Nixon and Cadie Myrtyl Nixon Cranston, under the date of September 8, 1936, be and the same is hereby expressly ratified and confirmed.

"It is further ordered, adjudged and decreed that said Anniston National Bank of Anniston, Alabama, as such trustee shall, from the moneys paid under this agreement and under said agreement of September 1, 1936, pay to complainant, Mamie Ethel Nixon, the sum of sixty-five dollars ($65.00) per month until the remainder of the $1172.49 mentioned in the second paragraph of this decree is paid and said trustee shall thereafter pay to the complainant, Mamie Ethel Nixon, the sum of fifty dollars ($50.00) per month until the deferred payments called for and provided in said note or contract of September 1, 1936 are fully paid and extinguished.

"It is further ordered, adjudged and decreed that should complainant, Mamie Ethel Nixon, die before all the $2172.49 herein ordered and provided to be paid to her has been paid, then her death shall act as a release from liability on the part of said Hubert William Nixon, Elsie Nixon Bryan, Herman Clarence Nixon and Cadie Myrtyl Nixon Cranston or any of them to pay any further part of said $2172.49, but this shall in no way affect their liability under said contract of September 1, 1936. It is further ordered, adjudged and decreed that in such event, any funds in the hands of said trustee for the use or benefit of complainant, Mamie Ethel Nixon, which have not been paid to her at the time of her death shall revert in equal parts to said Hubert William Nixon, Elsie Nixon Bryan, Herman Clarence Nixon and Cadie Myrtyl Nixon Cranston.

"It is further ordered, adjudged and decreed by the court that said Anniston National Bank as such trustee may pay such sums as can be paid out of the cash on hand belonging to complainant, Mamie Ethel Nixon, on the indebtedness outstanding against her in favor of S. E. Boozer if such trustee finds said payment to be to the best interest of complainant, Mamie Ethel Nixon.

"It is further ordered, adjudged and decreed that this trust is created under the Act of the Legislature of 1935 (Acts, 1935, page 626 [Code 1940, Tit. 58, § 1]) and

that sums of money and the property put in trust hereunder and under the agreement this day filed in court shall not be liable for or subject to be seized or be taken in any manner for the debts of said Mamie Ethel Nixon, whether the same be contracted or incurred before or after the creation of said trust."

The bill of review, filed April 4, 1941, sought to vacate the above decree, cancel the agreement upon which it was based, and reopen the original cause.

It was framed in two aspects: In one, it may be termed as strictly a bill of review, challenging the decree for error apparent on the record. In another, a bill in the nature of a bill of review challenging the decree for fraud in its procurement, including fraud in the procurement of the agreement on which the decree was based.

■ Error apparent on the record is charged to that feature of the agreed decree passing complainant's estate to a trustee and undertaking to clothe the estate with the immunities of a spendthrift trust, created in pursuance of Title 58, § 1 of the Code. This statute, head-lined "Express trust for support and maintenance of relative," looks to the settler's grant of his own property in trust to provide an income, limited in amount, for the benefit of a relative, etc. Clearly it does not repeal Title 20, § 1, declaring all conveyances made in trust for the use of the person making the same, void as against creditors. See citation to above Section. It is not insisted that the decree in this respect is effective against third persons. Indeed, it may be said no decree in a suit inter partes concludes anyone save the parties and their privies.

■ It is insisted, however, that this agreement and decree did create a lawful trust as between the parties. Title 47, § 145, expressly permits the creation of a trust for the use of the grantor: "But for a trust to be valid as a trust the legal title throughout the trust must vest in one or more trustees, with the power and duty to manage the trust property, subject to the supervision of equity; * * *."

Again: "A trustee ordinarily takes no greater estate than is needed for the support of the trust which he is to administer, and whenever a trust estate is created, a legal estate sufficient for the purpose of the trust shall, if possible, be implied in the trustee, whatever may be the limita-

tions in the instrument creating the trust; * * *" Title 58, § 3, Code of 1940.

The trustee here was charged with administrative responsibility in applying trust funds to payment of the Boozer debt. The power and duty to collect, conserve, and pay out the funds as specified, under supervision of the court, involves active administration duties, which bring this trust within Title 47, § 145. It was not a naked trust. As regards the sum of $2,172.49, or the residue thereof coming to complainant, it cannot be said this was a trust of complainant's own funds for her benefit. It appears the respondents, brothers and sisters of complainant, insisted upon this trust arrangement as a safeguard against the improvidence of complainant, and this additional sum was payable by respondents in consideration of the agreement as a whole. The fund became part of her estate by virtue of the agreement that it be held in trust, etc. Dealing with error apparent on the face of the record, apart from the question of fraud in the procurement of the decree, the agreement and decree based thereon created a lawful trust as between the parties, and any error in the provision declaring it a spendthrift trust under the statute affords no ground for avoiding the decree as a whole for error apparent etc. Henderson v. Sunseri, 234 Ala. 289, 174 So. 767; Henderson v. Henderson, 210 Ala. 73, 97 So. 353; Rochelle v. Rochelle, 237 Ala. 530, 187 So. 451; McCall v. McCurdy, 69 Ala. 65.

■■ A consent decree stands on still stronger grounds. It is contractual in character. If, in the contract, the party complaining has assented to provisions subject to attack by third persons, this does not clothe him or her with the right to rescind as against the other parties. When entered as a consent decree, there is a waiver of errors, and, as a general rule, the decree can be challenged by bill of review only upon the ground of fraud or mistake, working injury to complainant. Adler v. Van Kirk Land & Construction Co., 114 Ala. 551, 21 So. 490, 62 Am.St. Rep. 133; Cowley v. Farrow, 193 Ala. 381, 69 So. 114; Garrett v. Davis, 216 Ala. 74, 112 So. 342; Annotation, 139 A.L.R. 413 et seq.

■ This brings us to consider the other aspect of the bill charging fraud and misrepresentation in the procurement of the agreement and the decree based thereon. This presents the real substantial issue in.

the case; the issue to which evidence was mainly directed.

Judge Field, who heard the witnesses orally, found, in keeping with the testimony of Judge Carr, and attorneys for both sides participating in the settlement and entry of the consent decree, that Judge Carr took the precaution to carefully read and explain the terms of the agreement to the complainant in open court, assuring her that the agreement would not be confirmed by decree without her full consent, and she there fully assented to the agreement and the entry of the consent decree. We fully concur in this finding. There is no occasion to go further into details of the evidence.

The decree of Judge Field is due to be and is in all things affirmed.

Affirmed.

All the Justices concur.