24 So.2d 550

**MUDD et al. v. LANIER et al.**

**6 Div. 363.**

Supreme Court of Alabama.

Nov. 1, 1945.

Rehearing Denied Jan. 24, 1946.

Horace C. Wilkinson and Sadler & Sadler, all of Birmingham, for appellants.

Lange, Simpson, Brantley & Robinson and Bradley, Baldwin, All & White, all of Birmingham, for appellees.

FOSTER, Justice.

This is one of a series of suits relating to the will and estate of Edward Wilkinson, Sr., deceased, who died November 6, 1941. It is known in the series as case No. 55708, in the Circuit Court, in Equity (M. R. No. 2, page 461). It is an original bill in equity, and comes here on appeal by the respondents from a decree on their demurrer, and on their motion to dissolve the injunction which had been issued pending the cause.

The complainants are two adults and one minor, children of Mrs. Elizabeth Wilkin-

son Lanier, who is a daughter of decedent and one of his four children. The bill alleges that decedent had prior to his death created five living trusts, whose assets consisted of respective shares of the common stock of the Western Grain Company, one for his wife and one for each of his four children, of which he was trustee. It provides that in event of his death, resignation, failure or inability to act, Edward Wilkinson, Jr., and Elizabeth Wilkinson Lanier, two of the children, shall be successor trustees.

The trust instrument (M. R. No. 1, page 39) provides in substance that if Mrs. Lanier died before the termination of the trust, the income should go to her surviving lineal descendants, per stirpes. It also provides conditions upon which it may terminate during the life of Mrs. Lanier. And that upon the termination of the trust, the remaining corpus shall vest in the then beneficiary or beneficiaries of said trust in their respective proportionate interest. The trust has apparently not terminated, and Mrs. Lanier is still in being. The will of decedent (M. T. No. 1, page 6) also sets up a trust including one hundred and fifty-one shares of common stock of the Western Grain Company, and of which Edward Wilkinson, Jr., and Mrs. Lanier are named trustees. In paragraph 8 it is provided that the net income was to be payable to his widow, Mrs. Grace Wilkinson, during her entire life in sufficient amount to maintain her as directed. The excess to be distributed to his said four children, in equal parts, as provided in paragraph 7, which was that "In event of the death of anyone or more of the above named beloved children, leaving lineal descendants surviving, the respective share of each deceased parent shall be distributed per stirpes to his or her lineal descendant," or if she leaves no lineal descendants surviving, but leaves a will, her legatees become entitled to her share in the income. All of that is with reference to the income during the continuance of the trust. The will makes provision for the termination of the trust concerning the stock of the Western Grain Company, in substance that it shall continue during the life of the widow, and terminate at her death if twenty years shall have expired. If not, then it is to continue for the twenty-year period, provided "each adult direct descendant of this testator and each guardian of each minor interested in this estate shall unanimously consent and agree in writing to terminate this trust."

It then provides in substance, so far as here material, that on the termination of the trust, the assets in it shall be distributed among the four named children, or those of them surviving, per capita, or in event of the death of any of them intestate leaving surviving lineal descendants, they shall inherit per stirpes the share of the deceased parent; or in event of such death testate, with or without lineal descendants, the share shall pass acording to the will of said decedent. That trust has not terminated, and their mother Mrs. Lanier is in being. Whether she shall be living at the termination of the trust, or if dead, whether she shall be testate or intestate, cannot be known at the present time.

The interest of these complainants as the lineal descendants of Mrs. Lanier in the common stock of the Western Grain Company is controlled by the terms of the two trusts to which we have referred. They claim that they have rights of remaindermen, which they seek to protect by the bill of complaint.

The bill (M. R. No. 2, page 461) alleges that Mr. J. P. Mudd, the husband of Mrs. Marguerite Mudd, one of the four children, owned a large amount of both common and preferred stock in the Western Grain Company, and was a director, and became very insistent upon imposing his views in its management (M. R. No. 2, page 468). The executors and trustees had two hundred and seventy-one shares of common stock, and Mr. and Mrs. Mudd owned one hundred and eighty-four shares of common stock, all of which had general voting righs. There were outstanding five hundred such shares. So that treating the common stock as alone having general voting rights, the executors and trustees would have a majority of it.

But there were also outstanding one hundred and fifty shares of preferred, of which Mr. Mudd owned fifty-nine shares. That none of the preferred stock had for twenty years been treated as voting stock (paragraph vii—f). A special meeting of the directors of Western Grain Company was held on December 17, 1941 (M. R. No. 1, page 67). At said meeting Mr. Mudd made many charges against and demands upon the trustees and executors; also claimed that decedent was indebted in a large sum to the Western Grain Company. The directors were McCall, Edward Wilkin-

son, Jr., J. P. Mudd, Mrs. Mudd, Mrs. Lanier and Sterling Lanier. They elected Edward Wilkinson, Jr., president, McCall, vice-president. They ordered the payment of a bonus of $15,000 for the employees, in separate amounts to be fixed by the president. The salary of McCall was fixed at $10,000 for the ensuing year: a bonus of $7,500 for McCall and Edward Wilkinson, Jr., each; and $5,250 as the bonus to the estate of decedent. On all those matters the directors voting for them were Mr. and Mrs. Lanier, McCall and Edward Wilkinson, Jr.; and those voting against each such proposal were Mr. and Mrs. Mudd, except the election of McCall as vice president, and the fixation of his salary, as to which the vote was unanimous.

The instant bill also alleges that soon afterwards Mr. Mudd, joined by his wife and the widow of decedent, then a non compos mentis, acting by Mrs. Mudd as next friend, filed an original bill of complaint (known as case No. 53010), purporting to protect the Western Grain Company from threatened mismanagement and dissipation of its assets and from the alleged incompetent and improvident control of the co-executors. Neither of these complainants, nor anyone in their immediate class or group, was joined as a party to that suit, and had no part in it whatsoever. But the co-trustees and co-executors, supra, as such and individually, and Mr. Lanier were among the respondents.

On May 25, 1942, there was an agreement entered into for a decree to be entered in settlement of that suit. These complainants were not parties to that agreement in person or by guardian, or counsel. But the said Edward Wilkinson, Jr., and Mrs. Lanier as the co-executors and co-trustees were parties to it (M. R. No. 1, page 171). The case was not tried upon its merits, but the decree of the court was based solely upon the agreement in writing by the parties to it.

The bill (M. R. No. 2, pages 470-473) complains that it is prejudicial to their rights in several respects.

It is pointed out (a) that the consent decree enjoined Edward Wilkinson, Jr., as a trustee under the living trust from voting the stock in the trust for any trustee or co-trustee under the trust instrument or any executor or co-executor of the estate of Edward Wilkinson, Sr., as a salaried officer of the Western Grain Company, other than as director, which was in violation of the terms of the trust instrument, which confers upon the trustees or trustee power to vote all shares of stock of the Western Grain Company held in trust as if they were sole owners of them.

(b) That it also enjoined the said Edward Wilkinson, Jr., as trustee from using his own judgment in voting the stock belonging to the estate under the authority of the will of decedent.

(c) Under the consent decree Mrs. Lanier as co-trustee and co-executor was ousted, though no complaint was made of her, and Edward Wilkinson, Jr., the remaining co-trustee and co-executor, was enjoined from naming her successor notwithstanding the living trust instrument and the will provide that in event of one of them resigning, the remaining co-trustee should have power to fill the vacancy.

(d) Said decree enjoined Western Grain Company from retiring, calling or redeeming any of the preferred stock for a period of five years (M.R. No. 1, page 174 [3]); and it was forced to issue a large number of preferred shares at eight percent. when it needed no money and had just collected $112,000 insurance on the life of decedent and had unlimited borrowing capacity at low rates of two or three percent.

(e) Said decree awarded Mr. Mudd a judgment against the Western Grain Company for $15,000 when there was in truth no basis for said judgment and no such claim was made in the pleading in the cause; and it is alleged that there was a wrongful distribution of the assets of the corporation.

(f) Said decree sanctioned the issue of one hundred and fifty shares of preferred stock to Mr. Mudd in satisfaction of that judgment, alleged in the decree to be with the assent and concurrence in open court of all holders of common stock in said corporation. The instant bill alleges that this was a fraud on the complainants, who were not represented as to said consent decree. And that one hundred shares of such stock had previously been retired and cancelled, and the corporation had no power to reissue it.

(g) That the consent decree required the Western Grain Company to pay a solicitor's fee for complainants in that suit of to-wit, $13,500.

(h) That Mr. Mudd is claiming that the one hundred and fifty shares of pre-

ferred stock issued to him is voting stock, and therefore that he and Mrs. Mudd own a majority of the voting stock.

The bill alleges that Mr. Mudd has made exorbitant proposals for his personal benefit by reason of such control.

That all those matters constitute a prejudicial invasion of the rights of complainants on account of their equitable interest in the common stock of the corporation and constitute a fraud upon them.

It then alleges that Mr. Mudd will, if allowed to gain control, exploit the corporation for his own benefit and inflict permanent and irreparable injury upon the corporation; that the corporation was without power to issue the preferred stock to him, and paragraph X of the bill (M. R. No. 2, page 476) that neither that nor the previously outstanding preferred stock is voting stock. (This averment is not supplemented by allegations setting out the charter provisions authorizing it, by which its voting powers may be determined.)

The bill was amended (M. R. No. 2, page 688), by which it undertook to allege fraud worked on Edward Wilkinson, Jr., and Mrs. Lanier as co-trustees and co-executors to secure the execution of the contract effecting the consent decree.

The decree of the court on demurrer to the bill as amended held that the allegations of fraud were insufficient except those set out in paragraph VII (2d) (e) of the amendment (M.R. No. 2, page 690), but that they were sufficient as there set out and therefore the demurrer to that phase of the bill was overruled; likewise to the bill as a whole; and to the aspect praying for an injunction: to its effect as a minority stockholders' bill: to that phase seeking a construction of the will and living trusts; and to the aspect to prevent a diversion of complainants' contingent property interests. The decree overruled the motion to dissolve the injunction.

The appeal is by Mr. and Mrs. Mudd who assign errors: (1) in overruling demurrers to the bill as a whole; (2) to that aspect setting up fraud; (3) to that aspect praying for an injunction; (4) to that aspect seeking relief as a minority stockholder; (5) to that aspect which seeks a construction of the will; (6) to that aspect which seeks to prevent a diversion of contingent property interests; (7), (8) and (9) to that aspect which seeks injunctive relief; (10) to that aspect seeking to review, reopen, annul and avoid the decree of May 25, 1942; (11) that the court erred in overruling the motion to dissolve the injunction; (12) and in rendering its decree which is dated April 28, 1942.

The Western Grain Company assigned errors in substance the same, as did McCall.

It may also be observed that the consent decree (M.R. No. 1, page 172) in addition to the matters specially set out in the instant bill of complaint, purported (2) to have the resignation of Edward Wilkinson, Jr., as president of Western Grain Company; (4) have the resignation of Mrs. Lanier as co-executor and co-trustee and her successor appointed by the court; (6) release of Edward Wilkinson, Jr., and Mrs. Lanier from liability on any claim against them by Mr. Mudd, and they and the estate of deceased were released from liability to the Western Grain Company; (7) Mr. and Mrs. Mudd and Mrs. Wilkinson were released from liability on bonds described; (8) Western Grain Company to pay Edward Wilkinson, Jr., $1,225 balance account of salary, and if Edward Wilkinson, Jr., dies, resigns, or is removed as co-executor or co-trustee, he shall be succeeded by Mr. and Mrs. Lanier or their nominee.

There is no doubt but that the consent decree in some aspects is on its face detrimental to the owners of the common stock of the Western Grain Company. In others it may be beneficial.

Limiting Voting Power of Co-executors and Co-trustees.

It is urged that the decree was not prejudicial to complainants in prohibiting Edward Wilkinson, Jr., as co-executor and co-trustee from voting the stock of the estate and of the trusts, to effect the election of a trustee or executor of said estate as a salaried officer of the Western Grain Company, other than as director (M.R. No. 2, page 470 [b]), (but the directors and not the stockholders do that). The contention is on the theory that it would be in violation of their duty enjoined by law without such decree, on the principle that ordinarily a trustee cannot put himself in a position where his self-interest might prevent him from changing the investment of the trust estate by a sale of the stock in the Western Grain Company, even though it would be to the interest of the beneficiaries

that he should do so, citing Clark v. Clark, 167 Ga. 1, 144 S.E. 787; Mangels v. Safe Deposit & Trust Co., 167 Md. 290, 173 A. 191; Pyle v. Pyle, 137 App.Div. 568, 122 N.Y.S. 256; In re Kirkman's Estate, 143 Miss. 342, 256 N.Y.S. 495.

But we consider this feature of the consent decree not of controlling importance, if not impractical of operation, and will not give it further consideration.

### Beneficiaries When Necessary Parties.

■ It is often true the beneficiaries of a trust, though they own a vested interest, are not necessary parties to a suit in equity by the trustee. That is true when the suit does not affect the relations between the trustee or the trust estate and the beneficiary, as when the trustee is seeking to enforce a security or collect a debt for the estate. Adler v. First Nat. Bank of Birmingham, 233 Ala. 325, 171 So. 904; Silverstein v. First Nat. Bank, 231 Ala. 565, 165 So. 827, and cases there cited; and when some person is seeking in equity to reduce the assets of the estate, as to which there is no conflict of interest between the estate and beneficiary. The trustee then represents the beneficiary. Watts v. Steele, 19 Ala. 656, 54 Am.Dec. 207.

■ The relief sought in the suit which was settled May 25, 1942 (No. 53010), was not adverse to the interest of these beneficiaries. It did not seek to affect the rights of these beneficiaries adversely, but favorably. It was within the exception of the rule which requires all known interested persons in being to be made parties if they are to be affected by the proceeding. Silverstein v. First Nat. Bank, supra. They were in being, and were not numerous or unknown so as to justify their representation under Equity Rule 30 or 31(a), Code 1940, Tit. 7 Appendix, or section 128, Title 7, Code, and there was no effort to do so, and therefore the equitable principle of virtual representation, discussed in Ussery v. Darrow, 238 Ala. 67, 188 So. 885, has no application, Dunn v. Ponceler, 239 Ala. 53, 193 So. 723; Byars v. Spencer, 206 Ala. 79, 89 So. 280, but they were not necessary parties to the bill as it appeared in court.

■ While the bill as drawn did not show an effort to prejudice their rights in the stock of the Western Grain Company, the consent decree has provisions which apparently are prejudicial to them, not involved in the issues made in the bill. While they may not have been necessary parties to the bill, as drawn, they cannot be deprived of property rights not within those issues by virtue of a decree, whether or not it is entered by consent of the parties to the cause if those parties cannot bind complainants by the agreement. The question then is, to what extent may those parties bind these complainants by an agreement, as manifested in the consent decree.

### Effect of a Consent Decree.

■ A consent decree has elements of difference from one representing judicial determination by the court. For it then "must be 'regarded as in the nature of a contract or binding obligation between the parties thereto.'" Garrett v. Davis, 216 Ala. 74, 112 So. 342, 343; Cowley v. Farrow, 193 Ala. 381, 69 So. 114; Nixon v. Nixon, 245 Ala. 43, 15 So.2d 561; Adler v. Van Kirk Land & Construction Co., 114 Ala. 551, 21 So. 490, 62 Am.St.Rep. 133; Carr v. Ill. Cent. R. R. Co., 180 Ala. 159, 60 So. 277, 43 L.R.A.,N.S., 634; 30 C.J.S., Equity, § 678, p. 1126. It is controlled by certain principles which govern the effect of a contract, Cowley v. Farrow, supra, 193 Ala. at page 384, 69 S.W. 114, though it is a judgment and has the force of one as long as it so remains.

■■ Such a decree can be vacated on the same grounds which would justify setting aside the contract by which it is entered. Ex parte Gresham, 82 Ala. 359, 2 So. 486; 30 C.J.S., Equity, § 682, p. 1130. For it to be binding the contracting parties must be sui juris. Adler v. Van Kirk Land & Con. Co., supra.

■ A guardian ad litem cannot agree to a final decree affecting the rights of a minor. Hooper v. Hardie, 80 Ala. 114; Mitchel v. Hardie, 84 Ala. 349, 4 So. 182. Such a decree may be vacated on bill of review. Mitchel v. Hardie, supra. One who is not a party to a suit in which a consent decree was rendered may maintain an original bill to vacate it as to him, if the consent was procured by fraud, or if those consenting had no right to represent or bind him to that extent. Curry v. Peeples, 83 Ala. 225, 3 So. 622.

■ So that the decree of May 25, 1942, can have no greater effect on an attack by these complainants for fraud or illegality, especially the minor, than can an agreement made by a trustee or by the owner of the precedent estate in derogation

of the rights of the beneficiary or remaindermen. If this is attempted to be done by the owner of the precedent estate, it justifies relief on their behalf (Teal v. Mixon, 233 Ala. 23, 169 So. 477) on the same theory that would justify a wife to sue to protect her dower rights against her husband's contracts, though he be still alive, and he refuses or neglects to take action, Hamm v. Butler, 215 Ala. 572, 112 So. 141, or has put himself where he cannot do so. Coon v. Henderson, 240 Ala. 492, 199 So. 704.

Can the Trustees Bind These Complainants by the Consent Decree?

■ These complainants, if they are beneficial owners under the trust instruments of common stock in the Western Grain Company, have a right under certain further conditions to protect that stock from spoliation by the unlawful act or contract of the trustees, which would have that effect if unchallenged, and may maintain a suit in equity to that end. The principle controlling under those circumstances is stated in Duggar v. Tayloe, 60 Ala. 504; Gilchrist v. Gilchrist, 223 Ala. 562, 137 So. 406; Faulk v. Money, 236 Ala. 69(5), 181 So. 256; 24 C.J. 796, note 7; 34 C.J. S., Executors and Administrators, § 738, p. 764, note 3, citing our case of Gilchrist v. Gilchrist, supra, even though their claim is in remainder. Wragg v. City of Montgomery, 245 Ala. 362, 17 So.2d 173.

The principle there declared will enable the beneficiaries to obtain relief from the damaging effect on their property rights of a transaction by the executors or trustees acting either in collusion with others or where their action is induced by the fraud of others, or if it is detrimental to the property interests of the beneficiaries and contrary to their duty or authority. Tecumseh Nat. Bank v. McGee, 61 Neb. 709, 85 N.W. 949, citing Duggar v. Tayloe, supra; Wragg v. City of Montgomery, supra.

■ In Gilchrist v. Gilchrist, supra [223 Ala. 562, 137 So. 409], it is thus stated: "When the administrator has assumed an antagonistic position, sided with the debtor, and entered into undertakings which incapacitate him, or present obstacles to a suit by him," the heir or distributee may sue in equity in his own name. It is there also said that the beneficiary "cannot be required to surrender his property interest for a mere right of action on the administrator's bond."

We do not think that necessarily means a covinous or fraudulent purpose on their part. But if the executors or trustees enter into a transaction in violation of a duty enjoined on them by law or the trust instrument, to the prejudice of the beneficiaries, their remedy is within the principle above announced. It is wrongful and violative of the rights of the beneficiaries if the executors and trustees intentionally disregard their duty by agreeing to that which is prohibited by the trust instrument, the law or the Constitution. We are not dealing with the power of the trustees to vote the stock in stockholders' meetings, but to make an agreement in derogation of the property rights of the beneficiaries in the corpus of the trust fund.

As to the Validity of the 150 Shares of Preferred Stock.

■ The trustees and executors were wholly without power to consent for the Western Grain Company to issue preferred stock, "except for money, labor done, or property actually received," as provided in section 234, Constitution (see, also, section 26, Title 10, Code). It is there declared that stock without such consideration shall be void. Crawford v. Twin City Oil Co., 216 Ala. 216, 113 So. 61; Perry v. Tuscaloosa Cotton Seed Oil Mill Co., 93 Ala. 364, 19 So. 217.

■ When its issuance or reissuance is by virtue of a consent decree so providing, and by virtue of that same consent decree the consideration is declared to be the satisfaction of a judgment rendered also by virtue of that decree, the satisfaction of that judgment is not such consideration as is required by the Constitution and law for the issuance of stock, if the consent judgment so satisfied was itself without adequate consideration of the sort required by the Constitution. The consent decree of May 25, 1942, is one transaction and under its allegations the issuance of stock in satisfaction of the judgment depends for its consideration upon the requirements of the Constitution.

■ The bill alleges (and the consent decree declared [M.R. No. 1, 175(5)], that the consideration for said one hundred and fifty shares is the satisfaction of a judgment rendered in the same decree for $15,000 in favor of Mr. Mudd. The allegations of the bill in this respect, as set out in one alternative, are contained in paragraph VII(e), as follows: "Said decree

purported to award J. P. Mudd a judgment against the Western Grain Company for $15,000.00, thus correspondingly reducing the value of the stock of said corporation held in the five living trusts and in the said testamentary trust created by the will of decedent, Edward Wilkinson, Sr., in all of which trusts complainants were at said time and are now beneficially interested. Complainants show the facts to be that there was in truth no basis for said judgment and neither in said pleading nor otherwise was advanced any claim to said sum of money except as a wrongful and illegal distribution of the assets of said corporation in fraud of the rights of all other stockholders and of those like complainants, beneficially interested in the stock of said corporation." M.R. No. 2, page 472.

The trustees and executors could not permit any collateral benefits which they might have thought sufficient to reimburse their trust estate on this account to justify the execution of a contract for the issuance of stock without "money (paid), labor done or property actually received," which is expressly prohibited by the Constitution, and declared by it to be void if attempted. It matters not with what good faith it is made, it is subject to be vacated by a proper party. In such an attempt, the court will not inquire whether the contract as a whole was or not detrimental to such party.

But such allegations are not clear and precise to show a violation of the Constitution quoted supra, and may be subject to demurrer on that account, but they are sufficient on motion to dissolve an injunction for want of equity on principles to which we will refer.

■ The other alternative allegations in that connection set forth in paragraph VII (f) (M.R. No. 2, page 472), are as follows: "Said decree sanctioned the issue of one hundred fifty (150) shares of its preferred stock by the Western Grain Company to respondent J. P. Mudd to the great injury and damage of other stockholders in that if said corporation was indebted in any sum to said Mudd it was in ample funds to discharge said obligation, and if it had been necessary to fund said indebtedness it could have secured money at a rate far less than 8% per annum, the dividend rate of said stock, and in further derogation of the rights of other stockholders in that the holders of other preferred stock were not given a right to participate in said issue of stock in proportion to their holdings as is provided by statute and which is a valuable right."

There is here alleged no illegality nor breach of trust; nor any act by the trustees not in accord with good faith. But the decree of the trial court has not held that either alternative is sufficient in its allegations when tested by demurrer, but that the bill as a whole has equity supporting the injunction.

It is also alleged in paragraph VII (f) (M.R. No. 2, page 473) that one hundred of the one hundred and fifty shares now being considered were wrongfully and illegally issued for the further reason that they had been by the corporation previously retired and cancelled, and the corporation was without power to reissue same. The certificate of incorporation is not set out nor that feature of it relating to such stock, as provided in the Act of the Legislature, which is now section 39, Title 10, Code of 1940. 18 C.J.S., Corporations, § 279, p. 756.

The bill does not show whether such retirement was thus duly authorized. Compare 18 C.J.S., Corporations, § 211, p. 645. But the decree of the trial court has not held that those allegations sufficiently allege a retirement and cancellation, and that they are not subject to demurrer. We have nothing therefore to review in that connection.

### Remedy of Stockholders.

■ A party to such an illegal transaction is not bound by his contract in that respect so as to prevent him from suing to vacate it. A contrary policy, it is said, would thwart the purpose of the law, and therefore the doctrine of unclean hands would not be available. Deitrick v. Greaney, 309 U.S. 190, 60 S.Ct. 480, 84 L. Ed. 694: see, Morton Salt Co. v. G. S. Suppiger Co., 314 U.S. 488, 62 S.Ct. 402, 86 L.Ed. 963; Durr Drug Co. v. Acree, 239 Ala. 194(2), 194 So. 544. The corporation may therefore sue to cancel such stock, Crawford v. Twin City Oil Co., supra (3), although it was a party to its issuance.

■ It seems to be fully recognized that such a right in equity to cancel exists in the other stockholders also on certain conditions. 18 C.J.S., Corporations, § 249, pp. 702, 707; 14 C.J. 466, § 663; Crow v.

Florence Ice & Coal Co., 143 Ala. 541, 39 So. 401; Perry v. Tuscaloosa Cotton Seed Oil Mill Co., supra; American Ice & Industries Co. v. Crane, 142 Ala. 620, 39 So. 233. That is to say, that this right is primarily in the corporation itself, and as a general rule stockholders cannot thus proceed without having first applied to the directors for such redress. Masberg v. Granville, 201 Ala. 5, 75 So. 154. But it is not necessary to do so where it would be wholly useless. Crow v. Florence Ice & Coal Co., supra. The directors now dominating its affairs seem to have the same opinion as to the consent decree as prevailed when it was made (see, paragraph VII [7th] amendment, M.R. No. 2, page 698), and it could not be expected that those directors would on request of a contingent beneficiary of the trust, holding a minority of the stock, enter a suit to undo the proceedings and annul the contract. Tillis v. Brown, 154 Ala. 403, 45 So. 589; Montgomery Traction Co. v. Harmon, 140 Ala. 505, 37 So. 371; 18 C.J.S., Corporations, § 564, p. 1284; Ashwander v. T. V. A., 297 U.S. 288, 56 S.Ct. 466, 80 L.Ed. 688. The corporation and directors are made parties respondent to this bill, and seem to be opposing relief under it.

And if the issuance of the stock was in conflict with the constitutional requirement, and was by virtue of a contract made by the trustees in violation of their duty to the beneficiaries, under circumstances which authorize the beneficiaries to protect their property interest on principles discussed in this opinion, they may proceed in equity to cancel the consent decree as to them (Curry v. Peeples, supra), without the necessity of waiting for the corporation to act, and without calling upon the directors or stockholders to cause action to be taken. The primary right is then in the beneficiaries to be freed from the burden of an illegal contract thus affecting their rights, and the cancellation of the stock so illegally issued may result as an incident to that relief, but it is not primarily the basis of complainants' equitable remedy. The prayer of the bill is not to cancel the stock issue, but to cancel the consent decree of May 25, 1942, and to declare whether the preferred stock issued to Mr. Mudd is valid and subsisting. The presence of the corporation and directors in this suit serve to permit them to protect the corporation from any adverse decree in that connection.

The bill in one aspect, on a test of its equity indulging available presumptions, may be construed to show that under the consent decree the one hundred and fifty shares were issued to Mr. Mudd without "money (paid), labor done or property actually received," and therefore that the consent decree authorizing their issuance was void and adversely affected complainants. The decree holding that the bill has equity and supports the injunction may well be sustained on that aspect.

### As to Whether Complainants have Such Interest as to Justify this Suit.

So that if these complainants as beneficiaries of the trust have such interest as a court of equity will protect, they have properly sued. If they have only an expectancy, they have no substantial right in that connection, which the court considers as sufficient to invoke its aid. Upon that principle we have held that the beneficiary named in a life insurance policy, in which there is reserved a right in the insured to change the beneficiary has prior to the death of the insured but an expectancy, which is not of substance sufficient to maintain a claim in court that some third person by fraud or undue influence procured a change to be made by the insured so as to designate such third person as the beneficiary. Slaughter v. Grand Lodge, 192 Ala. 301, 68 So. 367; McDonald v. McDonald, 212 Ala. 137, 141, 102 So. 38, 36 A.L.R. 761; Metropolitan Life Ins. Co. v. Bramlett, 224 Ala. 473(2), 140 So. 752; Barnett v. Boyd, 224 Ala. 309, 140 So. 375; Taylor v. Southern Bank & Trust Co., 227 Ala. 565(4), 151 So. 357; McRee v. Russell, 239 Ala. 343(1), 194 So. 827.

Section 140, Title 47, Code, defines a vested remainder as "one limited to a certain person at a certain time, or upon the happening of a necessary event," and a contingent remainder as "one limited to an uncertain person, or upon an event which may or may not happen." Section 95, Title 7, Code, is that a "remainderman or reversioner of personalty may maintain an action against a wrongdoer for an injury going to destroy the existence or ultimate value of the property."

A remainder is more than a mere expectancy. Culley v. Elford, 187 Ala. 165 (3), 65 So. 381. A landowner's next of kin have a mere expectancy and cannot complain of his alleged fraud in dealing with it. Johnson v. Stephens, 240 Ala.

419, 199 So. 828. But a wife, having an inchoate right of dower, may during the life of her husband sue in equity to protect it, Hamm v. Butler, 215 Ala. 572, 112 So. 141; Coon v. Henderson, 240 Ala. 492, 199 So. 704, although such right is subject to be defeated if she dies before the death of her husband.

The right of these complainants is that of a contingent remainderman, who may sue to protect the property from loss or injury in a case otherwise proper. Braley v. Spragins, 221 Ala. 150, 128 So. 149; Badham v. Johnson, 239 Ala. 48, 193 So. 420; Ussery v. Darrow, 238 Ala. 67, 188 So. 885; Nabors v. Woolsey, 174 Ala. 289, 56 So. 533; Section 95, Title 7, Code.

The principle declared in the older authorities in this State which would define their interest as vested subject to divesture on the conditions named, as to which there was so much difference of opinion manifested in the case of Smaw v. Young, 109 Ala. 528, 20 So. 370, is now controlled by section 140, Title 47, Code, which was directed to that dispute so as to change its terms as there declared (see, Lyons v. Bradley, 168 Ala. 505, 513, 53 So. 244), though the change was immaterial for present purposes. See, 131 A.L.R. 724, and Duncan v. De Yampert, 182 Ala. 528, 62 So. 673, which was governed by the law as it existed prior to the adoption of section 140, Title 47, supra.

■ The right of a remainderman to sue for an injury to the estate as declared in section 95, Title 7, Code, is not limited to vested remaindermen. The remedy exists in equity also as to contingent remaindermen as well as to those whose rights are vested, without reference to a statute. Braley v. Spragins, supra; Badham v. Johnson, and other cases, supra; 31 C.J.S., Estates, § 98, p. 116, note 17; 21 C.J. 1012, note 25.

It is our view that these complainants are contingent remaindermen under both the living trust instrument and under the trust will, and as contemplated by section 95, Title 7, supra. They are therefore contingent beneficiaries of the trust and have the privilege of court action on the conditions stated in Duggar v. Tayloe, supra, and other cases cited.

They may therefore sue in equity seeking to cancel as to themselves a contract made by the trustees in the form of a consent decree to the extent that thereby there was issued preferred stock in the Western Grain Company in violation of law, apparently having rights which injure the value of their holdings, or because the trustees were defrauded into the execution of the agreement, if those matters are properly pleaded and proven. The right of the minor beneficiary to such relief is also supported by the principle that a consent decree is not effective against the interest of a minor, as we have shown.

### The Injunction was Properly Retained.

■ The instant bill prayed for an injunction against voting or accepting dividends upon the one hundred and fifty shares of preferred stock awarded to Mr. Mudd by the consent decree. We think the trial court was correct in holding that the facts alleged were sufficient to justify the general equity of a suit by a beneficiary of the trusts to obtain such an injunction (Badham v. Johnson, supra), though the complainants may be minority stockholders, and such a beneficiary has a right in equity under the allegations to prevent a depreciation of the stockholders' property interest by the consent decree.

### On Question of Fraud.

As we have said, the court overruled the demurrer to that aspect of the bill which seeks to set aside the consent decree on the ground of fraud.

The court's opinion in that respect is thus expressed:

"However paragraph VII (2d) (e) does charge that Mr. Mudd and Horace C. Wilkinson each knew that if Edward Wilkinson, Jr., Elizabeth W. Lanier or White Gibson had known that this stock had voting rights they would not have entered into the settlement and consent decree. This is probably sufficient in charging concealment by Mr. Mudd with knowledge of misapprehension which justifies the equity court in granting relief. Pomeroy's Equity Jurisprudence (5th ed.) section 847; 26 C.J. 1073; Perry on Trusts section 184.

"In Insurance Companies v. Raden, 87 Ala. 311, 5 So. 876, 13 Am.St.Rep. 36, the quotation from Pomeroy is approved. It is true that in that case there were confidential relations, but the enunciation of this doctrine apparently was independent of such relationship."

This shows that the judge was led to that conclusion by the allegations of para-

graph VII (2d) (e) (M.R. No. 2, pages 690–691).

It is noted that the bill does not allege that the preferred stock has general voting power, but, on the contrary, it is alleged in paragraph X of the original bill that all the preferred stock of the Western Grain Company is without voting power. But the amendment shows that Mr. Mudd is claiming that it has voting power, and, if so, it is claimed that the allegations of paragraph VII (2d) (e), supra, are sufficient to show fraud in procuring the decree by consent.

There can be no element of fraud as alleged unless in truth and fact the stock in question has general voting power. Although the allegation is made in the bill that it does not have such power, the charge of fraud is based on the assumption in the alternative that it does have those rights. So that the question in short is whether it is fraud in procuring a consent decree, if one party to the contract has knowledge that the stock has general voting rights, and also knows that the other party is mistakenly of the opinion that it does not have such rights and that he would not make the contract with such knowledge, but in doing so had the belief that it was not voting, and in their negotiations no reference was made to the fact that the stock did have such rights, and there were no confidential relations existing between them, nor other circumstances calling for a disclosure, and there was no active concealment or misrepresentation.

Fraud is defined in one aspect in section 109, Title 7, Code, as the suppression of a material fact when the party is under obligation to communicate it either by virtue of confidential relations or from the particular circumstances of the case. The case of Insurance Companies v. Raden, 87 Ala. 311, 5 So. 876, 13 Am.St. Rep. 36, is cited by the trial court. In that case the insurance agent was an expert, and the other party a foreign woman by birth and ignorant as to her legal rights. On that basis, the agent owed her a duty of disclosure. But our cases seem to hold that when both parties are intelligent and fully capable of taking care of themselves and dealing at arms' length, with no confidential relations, that no duty to disclose exists when information is not requested, and that mere silence is then not a fraud. There must be active concealment or misrepresentation. Lovell v. Smith, 232 Ala.

626, 169 So. 280; Peters Mineral Land Co. v. Hooper, 208 Ala. 324, 94 So. 606; National Park Bank v. Louisville & Nashville R. R. Co., 199 Ala. 192, 74 So. 69. Section 109, Title 7, supra, is said to be declaratory of the common law. Metropolitan Life Ins. Co. v. James, 238 Ala. 337, 191 So. 352, 355. It is there said, "In the absence of confidential relations, or special circumstances imposing a like duty, the rule seems to be settled that non-disclosure of facts to be fraudulent must be for purposes of deceit."

There is no allegation in paragraph VII (2d) (e) that Mr. Mudd, either in person or acting by his attorney, withheld the information for the purpose of deceit, nor actively did so at all. It is by virtue of the allegations of that paragraph that the demurrer to that aspect was overruled. It is not so stated elsewhere so far as we have discovered. But the bill alleges that all negotiations were had between Mr. Mudd's attorney, Judge Wilkinson, and Mr. White Gibson, attorney for the respondents.

It does not undertake to allege any facts or circumstances which would in the slightest impugn the good faith of Judge Wilkinson, or his activity in concealing the information. It does not allege that he had investigated the question or had information as to the voting rights of the stock, or that he said or did anything which had a tendency to mislead opposing counsel. It is our judgment that the court was in error in overruling the demurrer to the bill, which is directed to the aspect of fraud in procuring the consent decree.

We are not confronted with any difficulty as to whether the fraud was extrinsic or intrinsic as discussed in some of the authorities. McDonald v. Pearson, 114 Ala. 630, 21 So. 534; Adler v. Van-Kirk Land & Construction Co., supra; Eskridge v. Brown, 208 Ala. 210, 94 So. 353; Bolden v. Sloss-Sheffield Steal & Iron Co., 215 Ala. 334, 110 So. 574, 49 A.L.R. 1206; Farrell v. Farrell, 243 Ala. 389, 10 So.2d 153. The only fraud which is effective for present purposes is what is termed extrinsic: that is such as was instrumental in procuring the execution of the agreement or consent decree. Intrinsic fraud relates to the issue of fraud involved in the litigation. The question here is whether the consent decree was procured by fraud. We have discussed it on that basis.

### Mistake.

Counsel also argue that the facts alleged in the bill justify relief on the principle or theory of mistake, if they do not show such fraud as is sufficient to support relief. The principle contended for is that of an unilateral mistake. It is discussed in 21 C.J. 87–88, cited and quoted by counsel. See also 30 C.J.S., Equity, § 47. Our case of Ballentine v. Bradley, 236 Ala. 326, 182 So. 399, is to the same effect. They settle the principle that where the mistake is unilateral, relief is available only when the mistake is "accompanied by fraud or other inequitable conduct of the remaining parties," other elements being present. So that the principle as here applied is controlled by what we have said as to fraud. If there was a fraudulent concealment which induced the mistake, relief is available, whether it is called a "fraud" or a "mistake". But in the absence of such concealment or "other inequitable conduct" (not here alleged), relief is not available in either theory. The case of Venable v. Turner, 236 Ala. 483, 183 So. 644, showed no element of fraud or other inequitable conduct by the opposing party, and no relief was granted.

This does not conflict with the right of reformation when the language of a contract is agreed upon, but both parties understand it to have a legal effect different from that which the law applies to such language. Floyd v. Andress, 246 Ala. 301, 20 So.2d 331; Moore v. Tate, 114 Ala. 582, 21 So. 820; Orr v. Echols, 119 Ala. 340, 24 So. 357, 358.

But the effect of the consent decree must stand or fall as against these complainants on the power of the co-trustees and co-executors to bind them as there stipulated.

### Estoppel.

We are requested in some of the briefs filed on behalf of appellees to sustain the right to an injunction on account of the equity in the bill based upon a theory of estoppel growing out of the contentions made in case No. 53010. This contention is predicated on the theory that when a motion is made to dissolve an injunction for want of equity in the bill the court will presume that amendable defects have been made; and if it contains equity on the basis of that presumption the injunction may be sustained. The principle is fully discussed in McHan v. Mc-

Murry, 173 Ala. 182, 55 So. 793; Echols v. Orr, 106 Ala. 237, 238, 17 So. 677.

There is a distinction in this respect when the question is whether the injunction will be granted in the first instance or whether one which has been granted will be dissolved on motion. Dean v. Coosa County Lumber Co., 232 Ala. 177, 167 So. 566. But where the presumption obtains, it will not be indulged so as to presume that any substantive matter which could be imagined exists, but only that matters which are defectively pleaded are presumed to be properly pleaded, and ambiguities resolved in the interest of complainants. We will not presume the existence of substantive facts and contentions not attempted to be made in the bill. Chambers v. Alabama Iron Co., 67 Ala. 353; Coleman v. Butt, 130 Ala. 266, 30 So. 364; Town of Clio v. Lee, 199 Ala. 145, 74 So. 243; Burch v. Burch, 231 Ala. 464, 165 So. 387.

The elements of estoppel are not attempted to be alleged in the bill in connection with the proceedings in case No. 53010, except as they are involved in the claim of fraud. 31 C.J.S. Estoppel, § 69, p. 260, et seq.; Scharfenburg v. Town of New Decatur, 155 Ala. 651 (4), 47 So. 95; Huntsville Elks Club v. Garrity-Hahn Bldg. Co., 176 Ala. 128 (4), 57 So. 750. We do not feel justified on that status of the bill to attempt to analyze the theory of estoppel in that connection. It should be more explicitly presented. The court did not decree on a demurrer to that claim in the bill.

To the extent that the bill seeks a declaratory judgment, the demurrer was sustained, and complainants have not cross-assigned it as error. Amended Supreme Court Rule 3, Code 1940, Tit. 7 Appendix, 240 Ala. XVI.

### Conclusion.

The bill has equity, though defectively alleged, in that it is by remainder-men of personalty in trust seeking to prevent the ultimate value of the corpus of the property from being injured or destroyed, under the principle approved in section 95, Title 7, Code, as in the nature of a diversion of complainants' contingent property interests. In order to support its equity in that respect it is not necessary to give it some other equitable title, such as one for a declaratory judgment, or the construction of a will and other instrument, or as in the nature of a bill of review. And

it is not necessary to find that there was fraud entering into the agreed decree of May 25, 1942, to the extent that the co-trustee and co-executor exceeded their power in respect to the matters therein mentioned or acted contrary to the directions of the instruments by which they received their authority and contrary to the interests of complainants as contingent remaindermen. The decree correctly therefore overruled the motion to dissolve the injunction directed to Mr. Mudd to prohibit the voting of the one hundred and fifty shares of preferred stock and receiving dividends on same pending the hearing of the cause.

To what precise extent relief may be granted in the final decree, if any, is not now proper further to consider, and it. is not material whether the matters of relief prayed for are or may be each appropriate. A bill is not defective for an inappropriate prayer.

We think the decree was in error in holding that the bill sufficiently charged fraud in procuring the consent decree of May 25, 1942, but is without error to reverse in other respects. It is reversed as to that aspect, and otherwise affirmed and remanded, and the costs of appeal taxed against appellees.

Reversed in part; affirmed in part, and remanded.

All the Justices concur.

## On Rehearing.

FOSTER, Justice.

It is insisted that section 234 of the Constitution does not apply to the 150 shares issued to Mr. Mudd because (a) it was a stock sale and not a stock issue, and (b) because it was an issue of stock against surplus. And it is also insisted, in the alternative, that the record shows that the corporation received money or property of full value for those shares.

We cannot accept the theory that section 234, supra, and section 26, Title 10, Code, do not apply to stock originally issued after the corporation is organized and is a going concern. Section 1, Title 10, Code, directs the way and manner in which a corporation shall be organized. Subsection (4), § 2 authorizes it to begin business with not less than 25% of its authorized capital: also the amount of its authorized capital must be stated and the number of shares into which it shall be divided. Of course all the balance of its authorized capital stock may be issued after it begins business. Section 234 of the Constitution prohibits the issuance of stock except for the consideration named. That includes all its capital stock as and when it is originally issued. Unissued stock can be disposed of by the corporation only on the basis of the requirements of section 234 of the Constitution and section 26, Title 10, Code. Perry v. Tuscaloosa Cotton Seed Oil Mill Co., 93 Ala. 364, 9 So. 217. After it has been issued for a proper consideration and reacquired by the corporation, otherwise than by a redemption, it is an asset in its treasury to be bargained and sold as every other asset. 18 C.J.S., Corporations, § 212, p. 245. But it should not be issued, or otherwise disposed of, as an original issue, except for the kind and amount of consideration named in the Constitution and statute.

We are not dealing with non-par stock, which has a different status under section 26, Title 10, Code, from par stock. See section 44, Title 10, Code; Randle v. Winona Coal Co., 206 Ala. 254, 89 So. 790, 19 A.L.R. 118. Though it is of course controlled by section 234, Constitution. When par stock is issued the consideration should be of the same reasonable value as the face value of the stock. Section 26, supra; Perry v. Tuscaloosa Cotton Seed Oil Co., 93 Ala. 364, 9 So. 217; Riles v. Coston-Riles Lumber Co., 208 Ala. 508, 95 So. 43; Roman v. Dimmick, 115 Ala. 233, 22 So. 109; Parsons v. Joseph, 92 Ala. 403, 8 So. 788; Fitzpatrick v. Dispatch Pub. Co., 83 Ala. 604, 2 So. 727.

If the stock is issued for money, labor done or property actually received in some substantial amount, it will not be fictitious and void, though inadequate, but the subscriber may be liable in equity for the difference between the value received and the par value of the stock. Minge v. Clarke, 203 Ala. 189, 82 So. 439; Riles v. Coston-Riles Lbr. Co., supra; Roman v. Dimmick, supra; Elyton Land Co. v. Birmingham Warehouse & E. Co., 92 Ala. 407, 9 So. 129, 12 L.R.A. 307, 25 Am.St.Rep. 65; Nelson v. Hubbard, 96 Ala. 238, 250, 251, 11 So. 428, 17 L.R.A. 375, at the instance of creditors or innocent stockholders. Riles v. Coston-Riles, supra; Nicrosi v. Irvine, 102 Ala. 648, 15 So. 429, 48 Am. St.Rep. 92; Parsons v. Joseph, 92 Ala. 403, 8 So. 788. As to the meaning of a sub-

scriber in this connection see 14 C.J. 956, 957, 443 note 78; 18 C.J.S., Corporations, § 584, p. 1310, et seq.

"It is the statute, reinforcing the constitutional provision, (now section 26, Title 10, Code) which requires such correspondence in value in the case of subscriptions for stock." Nelson v. Hubbard, supra, 96 Ala. at page 250, 11 So. at page 432, 17 L. R.A. 375. (That refers to correspondence between value of the labor, property, etc., with the face value of the stock.) As to stocks, not bonds, such correspondence is required by section 26, Title 10, supra; Nelson v. Hubbard, supra, 96 Ala. at page 250, 11 So. 428, 17 L.R.A. 375.

The contention that capital stock may be issued against surplus is also made in appellant's brief, as justifying this transaction. But there is no allegation that the 150 shares issued to Mr. Mudd were against surplus. Sections 26 and 27, Title 10, Code, prescribe the conditions on which stock may be issued against surplus.

A corporation cannot without consideration issue stock against surplus for the benefit of one stockholder as it would be in the nature of a distribution of surplus to him, without making a ratable distribution to the other stockholders. The other stockholders who may have agreed to such an issue may not be able to complain, if their agreement is valid. We will not now say whether if such stock was issued against surplus and charged to surplus by consent of all the stockholders, for a valuable and adequate consideration, and so understood, the co-trustees could not bind these complainants by joining in it in good faith. It may be conceded that an issue of stock properly chargeable to surplus would not violate section 234, Constitution, if the surplus account was adequate, and based on accumulated tangible assets in excess of the capital stock, and arises from profits, not from enhanced values. The question was left open in Fitzpatrick v. Dispatch Pub. Co., 83 Ala. 604, 2 So. 727. But we repeat there is nothing to show that this stock was issued against surplus, or charged to surplus, or that the judgment was to effect a distribution of surplus.

A stockholder has no valid subsisting claim for any part of the surplus or profits until a dividend is declared. First Nat. Bank of Tuscaloosa v. Hill, 241 Ala. 606, 4 So.2d 170. If the stock is given him without a valuable consideration, though

paid for out of surplus or undivided profits, without a ratable amount also given to other stockholders, it must be by their consent effectively expressed.

The pleadings before us do not show that an amount representing the stock was charged to surplus and that there was adequate consideration for the surplus thus to be distributed to him, without other stockholders having a similar amount.

We do not say that a bona fide liability by the corporation to him on any account in an amount substantially equal to $15,000 would not support an issue of stock to him, provided the surplus and undivided profits accounts were able to take care of it, and it was charged to such accounts, or that it would be different from the payment of money to him in settlement of the claim and the use by him of the money to pay for the stock, and do not say that the co-trustees could not then validly so agree. That was left open in Fitzpatrick v. Dispatch Pub. Co., supra. We have no such case up to this time. See 18 C.J.S., Corporations, § 240, p. 672, notes 22 and 24. The co-trustees could not consent to the payment of a claim which has no substantial basis so as to bind the beneficiaries, whether such payment is made in money out of the profits or by the issuance of stock charged to surplus or profits.

So far we have dealt with the question on the theory that none of the 150 shares had ever been previously issued. By the word "issued" we do not refer to a sale of treasury stock, which has been previously issued and reacquired otherwise than by a redemption such as may be authorized by its charter.

The bill in the instant case refers to the issue of 150 shares to Mr. Mudd. Except as otherwise stated, we take that to mean originally issued. But it also alleges that 100 shares had been previously issued, retired and cancelled, and that the corporation had no power to reissue same. Let that be amplified by an amendment to the bill. It may very well be so, if it had been redeemed and retired by authority of the charter. 18 C.J.S., Corporations, § 201, p. 633, note 55.

It is insisted by appellant that the bill in case No. 53010, which is an exhibit to case No. 55708, shows that the Western Grain Company had a claim against the estate of decedent of $148,000, and which was released by the consent decree, in which the

judgment in his favor for $15,000.00 was rendered (but we find no such statement in it); that this judgment was for the agreed amount of compensation for his loss as a stockholder in said claim so released; also, that certain bonuses to the officers and employees of the corporation were voted by the directors at the meeting held on December 17, 1941, amounting to $30,000, and that the judgment as shown by the bill in case No. 53010 was intended to adjust his rights as a stockholder in respect to those bonuses. (But no such intention appears in that case.) There is not enough shown by the bill in that case, made an exhibit to this one, to sustain those claims. The facts in that connection should appear more adequately to justify a consideration of the effect of that contention. The question (if adequately presented) would then arise whether by reason of the settlement of the claim of $148,000 by the corporation against the estate, Mr. Mudd as a stockholder in the corporation would have a just claim for loss thereby sustained against the corporation, payable out of surplus or profits, as that its satisfaction would be as for money paid by the corporation to him and by him returned to the corporation, and whether that claim is the one on which the judgment was rendered, or was there some other basis for it. The question would also arise as to the $30,000 of bonuses voted to employees and officers of the company whether granting a stock issue to him on that account was thereby sufficiently supported by a constitutional consideration, and whether it was on that claim that the judgment was rendered.

We do not find a reference in the bill in case No. 53010 to the claim said to be of $148,000, above mentioned, though the consent decree releases the estate from liability to the corporation and treats all appropriate amendments as made to the bill. The decree is not clear as to the claim released. It is true that in the instant bill (M. R. No. 2, p. 468) it is alleged that at the directors' meeting of December 17, 1941, Mr. Mudd made such a claim, but it does not anywhere sufficiently appear to justify its treatment now as a feature of the claim on which the judgment for $15,000 may have been predicated. It is not so alleged in the pleadings before us, though by agreement the pleadings may be treated as sufficient to support the judgment. But the agreement does not in that respect, nor anywhere else, set out the nature of the claim for which judgment was rendered.

The important question to be considered is not whether Mr. Mudd had a claim against the corporation sufficient to support the judgment and stock issue, but whether such a claim did support them, and was thereby satisfied and discharged. There was no such claim described in the complaint in case No. 53010, in which the judgment was rendered by consent, so as to inform us what was its nature. We also observe that the question is not controlled by what was intended by Mr. Mudd to be thereby settled, but since no complaint shows what it was, neither does the judgment, the question is controlled by what was agreed mutually to be the consideration for the judgment and stock issue. It would also be pertinent to know what entries were made on the books of the corporation as to the nature of the claim so settled. On what account was it charged? Was it taken from surplus and added to the capital account?

Appellants' argument in no respect meets our view that since the stock was issued to him by agreement in satisfaction of a judgment rendered by that same agreement, which was not to be satisfied in any other manner, the consideration for the stock is the satisfaction of the claim on which the judgment is based. The important question is, what was that claim thus discharged. If that claim did not satisfy the Constitution, section 234, and section 26, Title 10, Code, full payment for the stock issue cannot be supported in equity over the contention of an innocent stockholder. The bill says there was no basis for that judgment. It is not clear what that means. The bill should be amended to make a clear statement that the claim on which that judgment was rendered was not for sufficient money, property or labor such as to satisfy section 234, Constitution, and section 26, Title 10, Code, or other applicable requirements in quality or amount. We think further discussion in that connection need not be made.

The bill also should be amended to amplify the allegations made as to the 100 shares alleged to have been retired and cancelled.

The bill does not seek to cancel the issue of stock as we have previously noted, but to cancel the consent decree by which its issuance was authorized. We do not think the co-trustees could consent to the

issue of stock whose issuance violated section 234, Constitution, as to the quality of the consideration required or violated section 26, Title 10, Code, as to the value of the consideration required so as to bind these complainants. We do not say that as to section 26, supra, they could not bind complainants by an honest conservative exercise of their right to contract for the trust in respect to the real values involved. That would not violate section 26. If the effect of such consent decree was to violate either the Constitution or statute, supra, it exceeded their authority, and the beneficiaries, complainants in this suit, may in equity have the consent decree cancelled as to them. We are not under the pleadings before us justified in expressing views as to the effect of that result upon other aspects of the situation. If that point is ever reached, the result should be determined upon issues made and there applicable and duly contested.

Application overruled.

All the Justices concur.