56 So.2d 638

**DOBBS TRUSS CO., Inc. v. SUTHERLAND.**

**6 Div. 60.**

Supreme Court of Alabama.

Jan. 24, 1952.

582

Jos. S. Mead, Birmingham, for appellee.

Taylor, Higgins, Windham & Perdue and Wade H. Morton, all of Birmingham, for appellant.

LIVINGSTON, Chief Justice.

Roy E. Sutherland, complainant, filed his bill of complaint in the court below against several respondents. One of the respondents, Dobbs Truss Company, Inc., filed a separate demurrer and upon a decree overruling the demurrer appealed to this court.

The bill alleges in substance the following facts: Respondent Dobbs Truss Company, Inc., was incorporated in Alabama in 1937 and was engaged in the business of manufacturing and selling trusses and abdominal supports. O. C. Dobbs, Sr., was the owner of a majority of the shares of the stock of said company, and controlled the company through the election of the Board of Directors and through the Board of Directors the officers of the company.

In 1938 Dobbs conveyed to the company by proper instrument for a valuable consideration the patents covering the trusses manufactured and sold by the company.

Complainant entered into three separate written contracts with the company in 1946 and 1947, in which complainant was given the exclusive franchise for the sale of the company's product in Mexico, parts of South America, and northern California. In each contract the company stated that it was the sole owner of the patent of the product, the "Dobbs Truss."

The contracts were breached by respondent Dobbs Truss Company, Inc., after complainant had performed his part of the contract, and were repudiated by the company. The damages suffered by complainant were also set out in the bill.

On March 29, 1948, complainant instituted suit in the Circuit Court of Jefferson County, at law, for the breach of contracts, claiming damages totaling $300,000.

On July 30, 1948, respondent O. C. Dobbs, Sr., filed suit in the same court claiming $28,171.42 in royalties due him on the trusses sold by The Dobbs Truss Company, Inc. The royalties were claimed under the terms of a written contract between Dobbs and the company made April 30, 1940. It was alleged that this suit was filed for "the purpose of hindering and delaying complainant in the execution of any judgment he might obtain against the said respondent Dobbs Truss Company, Inc., and that to this end the said O. C. Dobbs, Sr., did conspire and connive with respondents Homer C. Dobbs and J. W. Dobbs." It is further alleged that the said suit had no basis in fact, and the bill further set out that the patents under which Dobbs claimed in the suit were transferred to the said company in 1938 in consideration of the issuance to the said Dobbs of a number of shares in the said company. It was averred upon information and belief that there was no contract between Dobbs and the said company for the payment of any royalties, that there was no sum due Dobbs from said company, and that the suit "was fictitious and for the sole purpose of hindering, delaying and defrauding the complainant in the enforcing of his just claims."

The bill then averred that by reason of the fact that O. C. Dobbs, Sr., was the owner of the majority of the capital stock of the Dobbs Truss Company, Inc., and by reason of certain statements appearing in the three contracts executed by and between complainant and the Dobbs Truss Company, Inc., of which O. C. Dobbs, Sr., had knowledge, O. C. Dobbs, Sr., was estopped from now claiming that the Dobbs Truss Company, Inc., did not own the patents in question.

On November 1, 1948, the Dobbs Truss Company, Inc., allowed a default judgment to be taken against it "for the purpose of removing and concealing the assets and property of the said Dobbs Truss Company, Inc., and to hinder, delay and defraud complainant of his lawful suits."

In order to satisfy the judgment levies were made upon both real and personal property of the Dobbs Truss Company, Inc., by the Sheriff, and the property so levied upon was subsequently sold by the Sheriff at an execution sale, and was purchased by O. C. Dobbs, Sr., for the sum of $40.74, which was greatly disproportionate to its real value. The bill alleges that "in effect the acquisition of said property by said O. C. Dobbs, Sr., was without consideration and that in fact the said Dobbs Truss Company, Inc., voluntarily transferred said above described property to its principal stockholder, O. C. Dobbs, Sr., through the subterfuge of a fictitious and collusive suit."

The bill avers that the property of the Dobbs Truss Company, Inc., which was levied upon and sold by the Sheriff's sale, constituted all or substantially all of the assets of the Dobbs Truss Company, Inc., which were subject to levy and sale to satisfy any judgment which complainant might secure against the Dobbs Truss Company, Inc. After the levy and sale, it is averred that the Dobbs Truss Company, Inc., was insolvent, and that "if any property or chose in action remain in said Dobbs Truss Company, Inc., it is not nearly sufficient to satisfy the said indebtedness of said corporation to complainant."

On March 23, 1949, O. C. Dobbs, Sr., John D. Higgins and Waldrop Windham joined together as corporators and formed

the O. C. Dobbs Truss Manufacturing Company, Inc., to conduct the business of manufacturing and selling the said patented Dobbs Truss. O. C. Dobbs, Sr., subscribed for and received 198 shares of the total outstanding capital stock of 200 shares of the par value of $10 per share.

It is averred that all or substantially all of the property of Dobbs Truss Company, Inc., which was sold under the levy to O. C. Dobbs, Sr., was transferred by the said Dobbs to the new company, O. C. Dobbs Truss Manufacturing Company, Inc., for the consideration of the issuance of the shares of stock to the said Dobbs, or upon no consideration, and is being used by said company in the manufacture and sale of the same truss formerly manufactured and sold by the Dobbs Truss Company, Inc.

In his prayer for relief complainant prayed for an injunction against the transfer of the property described in the bill, being the property levied on at the Sheriff's sale: a decree setting aside the default judgment rendered at law against the Dobbs Truss Company, Inc.: a judgment for the amount of his claim against the Dobbs Truss Company, Inc., for breach of contract: a decree subjecting the described property to the satisfaction of any judgment which he might secure against said company: the appointment of a receiver: and for general relief.

■ Respondent's first assignment of error relates to the decree of the lower court holding its plea in abatement insufficient. This plea in substance set up the pending suit at law in which complainant sought recovery of damages for the breach of contract which was alleged in this bill. This assignment of error cannot be reviewed by this court on an appeal from a ruling on demurrer to the bill of complaint, as the decree is not appealable under Title 7, § 755, Code of 1940. Marion County v. Middleton, 246 Ala. 464, 21 So.2d 312; Austin v. Eyster, 242 Ala. 402, 6 So.2d 892; Walter T. Weaver Co. et al. v. Longshore, 240 Ala. 345, 199 So. 485. Respondent must await final decree in the cause, and then if that decree is appealed may assign the ruling on such plea as error.

■ Respondent, while admitting that a proper creditor's bill would lie, attacks the main equity of bill on two grounds, the sufficiency of the allegations of fraud and the description of the property. The cases cited by appellant on the general proposition that fraud must be alleged with particularity are substantiated by a number of our decisions. See Alabama Digest, Fraud, ☜41. However, the allegations of the bill in question are well within the limits set down by those cases. The case relied upon by respondent, Warren v. Hunt, 114 Ala. 506, 21 So. 939, is readily distinguished by the averment here that the cause of action upon which the default judgment was based was fictitious. See Weingarten v. Marcus, 121 Ala. 187, 25 So. 852.

■ Where complainant does not ask for discovery, it is generally held that the property alleged to be fraudulently conveyed must be described definitely and properly identified. Watson v. Watson, 231 Ala. 345, 164 So. 736, and cases cited therein. As we view the bill the allegations of the property's nature and location are sufficient as against respondent's demurrer attacking it on that ground.

■ Equity having attached to complainant's bill, we are of the opinion that the court may properly consider all the questions between the parties thereto, and may render a judgment for complainant on his legal claim for breach of contract and enforce it by appropriate remedies. Under our statute giving a creditor the right to bring a bill in equity to set aside a fraudulent conveyance, Title 7, § 897, Code of 1940, one who holds merely a legal claim which has not been reduced to a judgment is entitled to bring his bill. Hays v. McCarty, 239 Ala. 400, 195 So. 241, and cases cited therein. The only limitation is that the claim must not be one sounding in damages only. The existence of this limitation is strong evidence that the equity court may give complete relief to the defrauded creditor. The language of Mr. Justice Mayfield in Galloway v. Shaddix, 197 Ala. 273, 72 So. 617, to the effect that the equity action was in aid of the suit at law, is not controlling since the majority of the court did

not agree with his opinion, and only concurred in the conclusion.

 As to the other prayers for relief, the general rule that a bill is not demurrable for asking for too much relief or for joining unwarranted relief with proper relief applies. These prayers do not constitute separate aspects of the bill, and therefore cannot be reached by demurrer. Mudd v. Lanier, 247 Ala. 363, 24 So.2d 550; White v. Lehman, 210 Ala. 542, 98 So. 780.

The cause is due to be affirmed.

Affirmed.

FOSTER, SIMPSON and GOODWYN, JJ., concur.