# Town of Clio *v.* Lee.

### Injunction.

(Decided February 8, 1917.  74 South. 243.)

1. **Injunction; Enjoining Ejectment; Estoppel as Ground.**—Where it was sought to condemn two tracts belonging to the same person, but the judgment, containing no description, but merely awarding damages in solido, was void as to one tract, because of the attempted description thereof in the condemnation pleadings being insufficient to describe any land, ejectment on his legal title by the owner thereof will be enjoined, on the ground of estoppel, because of his acceptance and retention of the damages awarded for the two tracts; and this though the condemnor has made no expenditure in improvements.

2. **Equity; Dismissal of Bill; Want of Equity.**—Motion to dismiss for want of equity will be sustained only when admitting all the facts apparent on the face of the bill, though illy pleaded, complainant can have no relief.

3. **Injunction; Dissolution.**—Dissolution of injunction will be allowed only on want of equity in the bill, or the denials of a verified complaint; technical errors or inaccuracies not availing.

[Town of Clio v. Lee.]

APPEAL from Barbour Chancery Court.

Heard before Hon. O. S. LEWIS.

The town of Clio sought an injunction to restrain an eject-ment action brought against them by Mrs. A. T. Lee and the court granted a temporary injunction and later dissolved it and the town of Clio appealed. Reversed, rendered and remanded.

STEINER, CRUM & WEIL for appellant. A. A. EVANS and A. H. MERRILL & SONS for appellee.

SAYRE, J.—This is an appeal from the decree of the chan-cery court dissolving a temporary injunction by which had been restrained an action of ejectment brought by appellee against appellant. The municipal authorities of the town of Clio, appel-lant, having resolved to widen South Elba street, made applica-tion to the clerk of the circuit court, as provided by article 29 of the Code, for a writ ad quod damnum to assess the value of certain land owned by appellee therein described and referred to in the manner following: The application set forth the reso-lution of the town council to the effect that "South Elba street between Brundidge street crossing and McIlwain street crossing should be widened on the east side as follows: Beginning at a point opposite and in line with the front of the sidewalk of Teal & Teal storehouse, thence southward on a line parallel with the brick storehouse on the west side of said South Elba street and to McIlwain crossing." The application further, among other things, showed that appellee owned land adjoining said street as follows: "At the corner of South Elba street and Brundidge street 70 feet more or less, fronting said South Elba street." On the facts averred in the bill, as they will presently appear the foregoing description of one parcel of the property sought to be condemned is an impossibility. The application sought to con-demn also another parcel, a narrow strip, situated on the west side of South Elba street further to the south and beyond McIl-wain street. No mistake was made as to this other parcel; it is not involved in the present suit, and it is necessary to refer to it for the reason only that appellee's contention, which appears to have had currency in the court below, comes to this in substance, that because this narrow strip on the west side of the street was correctly described in the proceeding for condemnation, and no other land was correctly described, the whole of the money which

[Town of Clio v. Lee.]

appellant, as we shall see, paid into court as the assessed compensation for all the land taken should be treated by the court as compensation for the narrow west side strip only, and not at all as for the land now in controversy. The proceeding for condemnation, thus evidently involving two different and separated parcels of land, the one to the north and the other to the south of McIlwain street, the one on the west and the other on the east side of South Elba street, progressed through intermediate stages to a trial by jury in the circuit court where the damages sustained by this appellee were assessed in solidio and paid into court whence they were received by appellee. Afterwards, appellant having gone into possession of both pieces of the property which it supposed had been condemned, that is, as the bill explains, having gone upon the property and prepared it for the public use as a part of the street, appellee sued in ejectment for a lot described as being on the south side of Blue Springs street and fronting 70 feet on the east side of South Elba street; in other words, on the southeastern corner of South Elba and Blue Springs streets, after which the bill in this cause was filed.

By the bill it is made to appear that the town of Clio was built about the crossing of what is known as the Elba road and the road between Brundidge and Blue Springs. The Elba road to the south of the crossing is now South Elba street. The Brundidge-Blue Springs road west of the crossing is now known as Brundidge street, while that part of it to the east is known as Blue Springs street. For all practical purposes the two are one continuous road or street, different parts of which are now differently named. It further appears that appellee owned the property at the southeastern corner of the intersection and none other that touched upon either street at the intersection or north of McIlwain, which is a cross street next south of the street to which we may now conveniently refer as the Brundidge-Blue Spring street. The Teal & Teal storehouse, referred to in the description of the property in the application for condemnation, fronts on South Elba street at the northeast corner of that street and the street to which we have referred as the Brundidge-Blue Springs street. Appellee contested the ad quod damnum proceeding at all stages; but, as we have pointed out, she finally accepted and still retains the damages assessed. It also appears in the bill that testimony was submitted to the freeholders summoned for the preliminary assessment on the subject of the proper amount

that should be paid to appellee as damages, she being present by counsel, and that at said hearing no property was mentioned other than the property described in the application as the property of appellee; that in the circuit court no reference was made to any other land; that "the said land and the value of the buildings and fence"—the bill shows the buildings were at the southeast corner of the intersection—"was the issue before the jury, and their verdict was with reference to the value of the buildings and fences and land along with the rental value of the same; that through inadvertence the land at the corner of Blue Springs and South Elba streets was incorrectly described in the condemnation proceedings, it being described as being at the corner of Brundidge and South Elba streets, instead of at the corner of Blue Springs and Elba streets."

The manifest theory of the ejectment suit is that the property for which appellee there sued was not condemned for the reason that the application for the writ ad quod damnum described the property to be condemned as lying to the south of Brundidge street, or on the corner of Brundidge and Blue Springs streets, whereas the property in question lies directly south of Blue Springs street, or on the corner of Blue Springs and South Elba streets.

Defendant has not answered the bill. There is no denial of the facts averred. The injunction was dissolved on the ground that there was no equity in the bill. The natural justice of complainant's case is plain. Defendant has accepted the price, and the prompt judgment of the unsophisticated conscience is that the enjoyment by the public of the easement or the land for which it has paid the price should not be disturbed. Nor do any of the more or less artificial rules which of necessity affect the system of equity administered by the courts change the nature of the judgment. Defendant (appellee) objects to the bill for the alleged reason that to allow an interference by injunction with its action of ejectment would be equivalent to allowing a collateral impeachment of the judgment in the condemnation proceeding.

(1) We cannot accept appellee's view of the case. If only the parcel of property on the west side of South Elba street and south of McIlwain had been described in the condemnation proceeding, it may be conceded that appellant could not be permitted to show that the damages assessed included also the value of a

different piece of property, for that is what appellee's cited cases hold. But here it is perfectly plain on the face of the record of the proceeding for condemnation, which constitutes appellant's muniment of title, that the effort was to condemn two different and separated parcels of land, and that the damages for both parcels were assessed in solido. It is conceded that one parcel was adequately described, and that to it appellant acquired a good title. If the terms in which the other parcel is described were shown by the averment of extrinsic facts to be merely ambiguous, that is, applicable alike to more than one parcel of land, then, in that case, appellant would be allowed to explain and clear up its meaning by parol evidence in defense of the pending action of ejectment (*Chambers v. Ringstaff,* 69 Ala. 140), and, as against that action, its remedy at law would be adequate and complete, foreclosing any resort to equity. But the terms in which the other parcel, the one in controversy, is described, as defined by the veritable facts and not contradicted by the record, are impossible. The judgment is thus shown to be affected, not indeed by mere errors or irregularities, on account of which no collateral attack could be maintained, but by irreconciliable repugnancy the effect of which is to render the description void for uncertainty and the judgment of condemnation, as to any land other than the narrow strip on the west side of the street, a nullity. The application for the writ ad quod damnum, which, we take it, became a part of the record in the circuit court, describes the narrow strip on the west side of South Elba street, and discloses, very plainly indeed, an effort to describe a wholly different parcel; but the judgment itself contains not a word of description. It merely awards damages in solido. "The rule of law is, that every judgment of a court of justice must either be perfect in itself, or capable of being made perfect by reference to the pleadings, or to the papers on file in the cause, or else to other pertinent entries on the court docket."—*Alexander v. Wheeler,* 69 Ala. 332, 342. Now the facts averred in the bill show what property other than the narrow strip the parties in common considered and treated as involved in the condemnation, appellee's acceptance of the damages assessed in solido, appellant's entrance upon the property in controversy as a part of the property so condemned, and its continued possession, of which facts appellant's continued possession is also asserted by appellee's declaration in her action of ejectment. These facts make

[Town of Clio v. Lee.]

a perfectly good case for the application of the equitable doctrine that where a corporation having the power of eminent domain in the effort to exercise that power goes into possession under a deed or by a proceeding which turns out to be void, compensation having been made, the court will enjoin an ejectment by the owner of the legal title so by miscarriage left in him, and thus give effect to the estoppel in pais which has no effect upon the legal title. We have a number of cases which look to this effect. —*Jones v. New Orleans R. R. Co.*, 70 Ala. 227; *South & North Alabama R. Co. v. Alabama Great Southern*, 102 Ala. 236, 14 South. 747; *Cowan v. Southern Ry.*, 118 Ala. 554, 23 South. 754; *Hobbs v. N. C. & St. L. R. R.*, 122 Ala. 602, 26 South. 139, 82 Am. St. Rep. 103; *Hendrix v. Southern Ry.*, 130 Ala. 205, 30 South. 596, 89 Am. St. Rep. 27; *Alabama Central v. Long*, 158 Ala. 301, 48 South. 363; *Jones v. Southern Ry.*, 162 Ala. 540, 50 South. 380. This principle is sustained by the authorities generally.—2 Lewis Em. Dom. (2d Ed.) § 606; 3 Dillon Mun. Corp. (5th Ed.) § 1039. Consideration of public policy as well as recognized principles of justice between the parties, require the court to hold that the property in cases of this kind may not be reclaimed by virtue of the bare legal title remaining in the owner, and that the owner's equity is to have compensation awarded him where he has not been already compensated.—102 Ala. ubi supra. And "there is no principle of law better settled, or resting on wiser considerations of public policy, or higher considerations of justice, than that no person, whether sui juris or under disability, and the character of the disability is not of importance, who has received, and retains the fruits of a judicial proceeding, can be heard to assail it, either for irregularity or illegality, to the prejudice of others who have in good faith relied on and acted upon it as valid."—*Robertson v. Bradford*, 73 Ala. 116; *Creamer v. Holbrook*, 99 Ala. 52, 11 South. 830. This doctrine is modified to some extent in the case of infants who are allowed a right of election until their disability is removed or an election is made for them by the court.—*Hobbs v. N. C. & St. L. R. R., supra.* We need not consider the situation that might have arisen had the appellee, a married woman, executed, and appellant accepted, a deed without the assent of the husband evidenced as prescribed by statute—an hypothetical case upon the implications of which appellee bases some argument, and to which, or a like case, the court gave some consideration in *Hen-*

[Town of Clio v. Lee.]

*drix v. Southern Ry.*, 130 Ala. 205, 30 South. 596, 89 Am. St. Rep. 27, and *Clark v. Bird*, 158 Ala. 278, 48 South. 359, 132 Am. St. Rep. 25—for that is not what happened. If the husband and wife had joined in a deed which proved to be ineffectual at law for some reason not arising out of the statute which requires the husband's assent in a certain form, they would scarcely be allowed to retain the consideration without making the conveyance good.—*Knox v. Childersburg Land Co.*, 86 Ala. 180, 5 South. 578. But appellant followed the provisions of another statute (Code, § 1441) which competently provides for the cases of all sorts and conditions of owners, married women included. Nor does it matter that appellant's expenditures upon the improvement of the property, in order to prepare it for the use for which it was condemned, have not amounted to much—that no money appears to have been spent. The estoppel in pais necessary to the equity of complainant's bill is abundantly supplied by appellant's payment and appellee's acceptance of a sum of money a part of which, equal to the assessed value of the property, was paid as compensation for the land in suit.

(2, 3) A motion to dismiss for want of equity will be sustained only when, after admitting all the facts apparent upon the face of the bill, whether well or illy pleaded, the complainant can have no relief.—*Coleman v. Butt*, 130 Ala. 266, 30 South. 364. And the dissolution of an injunction will be allowed only upon the want of equity in the bill, or the denials of a verified answer. Appellee has not answered. Upon her motion to dissolve, technical errors or inaccuracies are not available. All amendable defects are regarded as amended.—*L. & N. R. R. Co. v. Bessemer*, 108 Ala. 238, 18 South. 880.

From the foregoing it results that the decree must be reversed. A decree will be here rendered reinstating the injunction, and remanding the cause for further proceedings.

Reversed, rendered, and remanded.

ANDERSON, C. J., and MCCLELLAN and GARDNER, JJ., concur.