170 So.2d 410

**Noah M. PENNINGTON**

v.

**BIRMINGHAM BASEBALL CLUB, INC.**

**6 Div. 119.**

Supreme Court of Alabama.

Oct. 8, 1964.

Rehearing Denied Jan. 14, 1965.

338

Weir & Shannon, Birmingham, for appellant.

Rogers, Howard, Redden & Mills, Birmingham, for appellee.

LAWSON, Justice.

This appeal is from a decree of the Circuit Court of Jefferson County, in Equity, overruling a motion to discharge and dissolve a temporary injunction.

Birmingham Baseball Club, Inc., a corporation, filed its bill against Carpenters Union, Local No. 103, an unincorporated association, and against Carpenters District Council, an unincorporated association, seeking an injunction forbidding picketing.

Upon presentation of the verified bill, a judge of the Circuit Court of Jefferson County, in Equity, ordered the issuance of a temporary injunction conditioned upon the complainant executing a bond in the amount of $1,000. The bond was executed, approved and filed and a temporary injunction was issued.

The respondents filed a motion styled "Motion to Discharge and Dissolve." This motion was set for hearing.

Subsequently, the complainant amended the stating part of its bill and also amended the bill by adding as respondents Birmingham Building and Construction Trades Council, an unincorporated association, and Noah M. Pennington.

A temporary injunction was issued and served on the respondents added by the amendment.

The complainant again amended the stating part of its bill. The respondents who were added by amendment, thereafter, filed a motion styled "Motion to Discharge and Dissolve." This motion was set for hearing on the same day as was the motion filed by the original respondents.

The motions to "Discharge and Dissolve" were submitted upon the pleadings and affidavits filed by the parties. None of the respondents filed an answer.

The trial court rendered a decree overruling "the separate and several motions of the respondents to dissolve and discharge the temporary injunction." From that decree the respondent Noah M. Pennington appealed to this court.

The register gave notice to the other respondents to appear before this court and unite in the appeal if they desired to do so. § 804, Title 7, Code 1940. They have appeared here and have separately and severally assigned errors. See New Morgan County Building and Loan Association et al. v. Plemmons, 210 Ala. 16, 97 So. 46. There was no necessity for an order of severance in the assignment of errors. The errors assigned are of separate prejudices and they are separately and severally assigned. See Maya Corp. v. Smith, 240 Ala. 371, 199 So. 549.

Under the statute (§ 1052, Title 7, Code 1940), the filing of a motion to dissolve an injunction does not waive a previously filed motion to discharge the injunction. The two motions may be made and considered at the same time, without prejudice to either. Barnett v. State ex rel. Simpson, 235 Ala. 326, 179 So. 208. It would be the better practice to file two separate motions to save the court from having to determine which of the grounds go to the discharge of the injunction and which seek its dissolution. But a motion such as was filed in this case need not be ignored simply because it is styled "Motion to Discharge and Dissolve." The grounds of the motion must be considered in the light of the distinction which has been made between a motion to discharge and a motion to dissolve. If there are grounds in the motion entitling the movant to have a temporary injunction discharged, then a decree to that effect should be entered. If there are no such grounds but the motion contains grounds sufficient to justify a dissolution of the injunction, it should be so decreed.

As we have indicated, submission in the trial court was on the pleadings and on affidavits filed by the parties. In the briefs

filed here much reliance is placed on the averments of the affidavits, none of which were made exhibits to the amended bill. The appellee, the complainant below, relies upon the affidavits filed by it in support of the trial court's action in refusing to discharge or dissolve the temporary injunction. The appellant, and the other respondents below who have joined in the assignment of errors, insist that the affidavits filed by them contain averments which should have led the trial court to discharge or dissolve the injunction. We will hereinafter refer to the respondents below as the appellants although, as we have shown, only one of them actually appealed.

The question is presented as to whether the averments of the several affidavits may be considered by us in passing on the action of the trial court in refusing to discharge or dissolve the injunction.

Section 1061, Title 7, Code 1940, provides:

"Upon the hearing of motion to dissolve an injunction, the court may consider the sworn bill and answer, whether the answer contains denials of the allegations of the bill or independent defensive matter, *and also such affidavits as any party may introduce.*" (Emphasis supplied)

The provision quoted above first appeared in the Code of 1907 as § 4535. In Nelson v. Hammonds, 173 Ala. 14, 55 So. 301, we said:

"* * * Previous to this statute [§ 4535, Code 1907] on motion to dissolve injunction affidavits were receivable, in certain exceptional cases, in refutation of the denials of an unequivocal, full, specific, sworn answer—Barnard v. Davis, 54 Ala. 565; Harrison v. Maury, 140 Ala. 523, 37 South. 361, among others. One of these exceptions was where waste was a probability if restraint of the adversary was not enforced. The cited statute entirely changes this rule by rendering serviceable upon the issue of dissolution vel

non in all cases evidence consisting of the bill, the answer, whether it carries denials of the bill's averments of fact or not, and 'affidavits' introduced by any party. The feature of the earlier rule in respect of largely conclusive character of the sufficient denials of the sworn answer cannot consist with the practice established by the statute quoted. It is hence abrogated; and with the overthrow of the rule of practice in that particular must, of course, go any influence otherwise to have been accorded decisions illustrating the now abrogated rule of practice. The full consequence of the change, as wrought by the statute, is not now attempted to be described.

"It will suffice to say at this time that conclusions for or against dissolution of injunctions will and must under the statute be treated here on review as any other finding of fact at equity upon a defined issue. This interpretation of the quoted statute accords with that provided in the feature of the system where the hearing is to determine the issuance vel non of an injunction. Code, §§ 4528, 4529." (173 Ala. 19–20, 55 So. 302–303)

All the cases which have come to our attention wherein this court has held that affidavits authorized by § 1061, Title 7, supra, are properly considered in concluding for or against the dissolution of injunctions, are cases wherein an answer had been filed. The contents of the affidavits were considered in connection with the factual issue presented by the bill and answer.

We hold that affidavits may not be considered where there is no answer and where the sole question presented is the sufficiency of the bill as attacked by a motion to dissolve, for such a motion confesses the averments of the bill, whether well or ill pleaded, and in the absence of an answer lies only where there is a want

of equity in the bill. Woodward v. State, 173 Ala. 7, 55 So. 506; Auto Mut. Indemnity Co. v. Moore, 235 Ala. 426, 179 So. 368; Burch v. Burch, 231 Ala. 464, 165 So. 387. See Town of Clio v. Lee, 199 Ala. 145, 74 So. 243. A motion to dissolve an injunction is somewhat similar to a demurrer for want of equity in a bill and, of course, affidavits not made exhibits to a bill could not be looked to to determine the sufficiency of the bill as against the demurrer interposed.

■ Section 1061, Title 7, supra, does not apply to motions to discharge injunctions and consequently the affidavits certainly may not be considered in passing on the question as to whether or not the trial court erred in refusing to discharge the injunction.

Before considering the several grounds of the motions to "Discharge and Dissolve" we will summarize the averments of the bill as amended. .

Complainant is an Alabama corporation which operates a professional baseball team known as the Birmingham Barons, which is a member of the Southern League and engages in baseball contests with other teams in that league.

The respondents, Carpenters Union, Local No. 103, and Carpenters District Council, are labor organizations, commonly called labor unions, which engage in the activity of representing their members, who are carpenters, in dealing with employers. The respondent Birmingham Building and Construction Trades Council is a labor organization which has among its membership labor unions and individuals who are engaged in the crafts associated with the building and construction industry. The respondent Noah M. Pennington is the president of Birmingham Building and Construction Trades Council.

Approximately one half of the games played by complainant's baseball team are played in Birmingham. The public is invited to attend the games upon the payment of an admission charge.

Complainant occupies a baseball field known as Rickwood Field, which it leases from the owner. Complainant has exclusive possession of Rickwood Field.

The 1964 baseball season began on April 17, 1964. Some time prior to that date the owners of Rickwood Field caused certain repair, renovation and maintenance work to be done on the stadium. Such work was done by carpenters and workmen from other crafts and trades, none of whom were represented by the respondents. All of the persons engaged in the repair, renovation and maintenance work were employed individually and directly, on a day-labor basis by the owners of Rickwood Field. At no time during the continuance of the employment of the workmen who were engaged in the repair, renovation and maintenance work did the respondents, Carpenters Union, Local No. 103, or Carpenters District Council ever attempt to be recognized as a bargaining agent for any of the carpenters or to negotiate in any way with the employers of the carpenters.

When the 1964 baseball season opened, the respondents began to place pickets at or near the entrances to Rickwood Field on the occasion of each baseball game played there. These pickets carried signs which were exhibited to the general public and to the customers of the complainant which contained the words, "This park remodeled by non-union labor."

The respondent Birmingham Building and Construction Trades Council and the respondent Noah M. Pennington participated in the picketing of Rickwood Field in that the respondent Noah M. Pennington, the president of the respondent Birmingham Building and Construction Trades Council, was present and personally participated in the picketing and in directing the pickets.

The complainant avers upon information and belief that members of the respondent

Birmingham Building and Construction Trades Council participated.

The picketing by the respondents is not related to any labor dispute between the complainant and the respondents, or any of them, in that there is no labor dispute pending between the complainant and the respondents or between the complainant and any members of the respondents, nor has there ever been any labor dispute between them. Complainant does not, regularly employ any carpenters in the operation of its business. None of the unincorporated associations which are made respondents to the bill is the bargaining agent for any of complainant's employees and none of them has ever sought recognition as the bargaining agent for any of complainant's employees.

The complainant further averred in its bill as amended as follows:

"6. * * * Complainant avers that the manifest purpose of the said picketing is to dissuade customers and patrons and potential customers and patrons of Complainant from attending the performance of baseball games by the Complainant's said team. Complainant avers that this said purpose is not a lawful and legitimate purpose for picketing the premises upon which the Complainant maintains its baseball stadium and plays its baseball games in that the said picketing is not industrially related to any activity carried on upon the Complainant's said premises.

\*     \*     \*     \*     \*     \*

"9. That the statements, as aforesaid, contained in said signs or placards exhibited by the said pickets are untrue in that some of the persons employed for the said repair, renovation and maintenance work prior to, to-wit, April 17, 1964, were members of labor unions.

"10. Complainant avers that it will suffer irreparable injury if the Re-

spondents are allowed to continue to picket and to maintain pickets at or near its said baseball stadium in that it will suffer the loss of customers and patrons, and lose the revenue therefrom, and will be held up to ridicule and scorn in the community. Complainant further avers that the said picketing by the Respondents, as aforesaid, is an annoyance and inconvenience to the Complainant and to Complainant's customers and patrons."

The distinction between the dissolution and the discharge of an injunction is well recognized by a long line of decisions which are cited in Patton v. Robison, 253 Ala. 248, 44 So.2d 254. The rule laid down in those cases is to the effect that a motion to dissolve an injunction touches the equity of a bill, while a motion to discharge reaches irregularities in the mode of granting or issuing the writ, or as expressed in some of the cases, where the writ is "improvidently" granted.

In brief filed here on behalf of appellants, the distinction between a motion to dissolve and a motion to discharge is recognized but no effort is made to point out which of the grounds of the motions to "Discharge and Dissolve" were directed towards the dissolution of the injunction and which were designed to bring about the discharge of the injunction. In view of the manner in which appellant's brief is framed and argument advanced, we are going to deal with the grounds of the motions to "Discharge and Dissolve" as being directed only to the dissolution of the injunction. In other words, we will consider that all the grounds of the motions question the equity of the bill as amended.

As we understand appellants' brief, they contend that the bill as amended shows on its face that the Circuit Court of Jefferson County, in Equity, was without jurisdiction of the subject matter in that its

jurisdiction was preempted by the National Labor Relations Act, as amended.

■ There are grounds of the motions to "Discharge and Dissolve" which take that point. In East and W. R. Co. v. East Tennessee, V. & G. R. Co., 75 Ala. 275, it was said that a motion to discharge was the proper remedy to raise the question of want of jurisdiction in the court issuing an injunction. But in that case the court's jurisdiction of the subject matter was not questioned. It was the power of the city court of Selma, Dallas County, to grant an injunction to be operative without the county of Dallas which was challenged. As we stated above, in this case it is the court's jurisdiction of the subject matter which is brought in question and we believe that if the bill, as amended, showed on its face that the court issuing the injunction was without jurisdiction of the subject matter it could be pointed out by a motion to dissolve, in that the bill, as amended, would be without equity. Of course, a plea in abatement is usually the way in which a question of jurisdiction is raised. Pucket v. Pucket, 174 Ala. 315, 56 So. 585.

■ The jurisdiction conferred on the National Labor Relations Board by the National Labor Relations Act, as amended, extends only to unfair labor practices which affect interstate commerce. 49 Stat. 449, as amended; 29 U.S.C. §§ 151–168; 29 U.S.C.A. § 160.

■ All other questions aside, we think it sufficient answer to appellants' insistence now under consideration to say that any claimed unfair labor practice by the complainant does not affect interstate commerce as we understand the holdings of the Supreme Court of the United States. In Federal Base Ball Club of Baltimore, Inc., v. National League of Professional Baseball Clubs et al., 259 U.S. 200, 42 S.Ct. 465, 66 L.Ed 898, it was held, in effect, that the business of providing public baseball games for profit between clubs of professional baseball players in a league and between clubs of rival leagues, although necessarily involving the constantly repeated traveling of the players from one state to another, provided for, controlled and disciplined by the organizations employing them, did not constitute interstate commerce. To like effect is the case of Toolsen v. New York Yankees, Inc., 346 U.S. 356, 74 S.Ct. 78, 98 L.Ed. 64.

The amended bill here involved does no more than show that complainant owns and operates a professional baseball team in Alabama which plays games with other teams in the Southern League. There is not even an averment to the effect that some or all of the other teams in the Southern League represent cities in other states. The bill as amended does not show that there are any radio or television broadcasts. See Gardella v. Chandler, 2 Cir., 172 F.2d 402; Martin v. National League Baseball Club, 2 Cir., 174 F.2d 917. We realize that neither the Federal Baseball Club case nor the Toolsen case dealt with the right of the National Labor Relations Board to assume jurisdiction of alleged unfair labor practices carried on by professional baseball teams, but in view of the clear holdings in those cases that the business of providing public baseball games is not interstate commerce, we feel compelled to apply those holdings to the situation presently before us. If a distinction is to be drawn between anti-trust suits, as were involved in the Federal Baseball Club case and in the Toolsen case and labor cases, it must be drawn by the federal courts. We do not think such a distinction exists where the sole business of the employer is shown to be the operation of a professional baseball team. See Pappas et al. v. American Guild of Variety Artists et al., D.C., 125 F.Supp. 343.

The other grounds of the motions to "Discharge and Dissolve" challenge the equity of the bill as amended in varying language.

■ Our decisions are to the effect that the right to conduct one's business without

the wrongful interference of others is a valuable property right which will be protected if necessary, by injunctive process. Carter v. Knapp Motor Co., 243 Ala. 600, 11 So.2d 383, 144 A.L.R. 1177.

It is our opinion that the averments of the bill show a wrongful interference with complainant's business. According to the averments of the bill, there is no labor dispute between complainant and any of the respondents. The respondents' grievance seems to be against the owner of the premises which complainant leases and that grievance was not manifested by picketing until after the repair, renovation and maintenance work on the baseball stadium had been completed and until complainant had opened the baseball season.

The general objectives of picketing are well known. Clearly the purpose and effect of the picket line whereon signs were displayed saying, "This park remodeled by nonunion labor," was to affect the attendance at baseball games sponsored by complainant, with whom the respondents had no controversy, past or present. The work on the stadium had been completed. The complainant was not responsible for the manner in which that work was performed and there was nothing that complainant could do to rectify any wrong which the owner of the premises had committed.

The picketing carried on by respondents was entirely punitive, since there was no controversy between respondents and the complainant concerning any facet of employer-employee relationship. The picketing by respondents, under the averments of the bill as amended, was correctly enjoined. See Carpenters & Joiners Union of America, Local No. 213 et al. v. Ritter's Cafe et al., 315 U.S. 722, 62 S.Ct. 807, 86 L.Ed. 1143.

Affirmed.

LIVINGSTON, C. J., and MERRILL and COLEMAN, JJ., concur.