**AMERICAN RADIO ASSOCIA-
TION et al., Plaintiffs-
Appellants,**

v.

**MOBILE STEAMSHIP ASSOCIATION,
INC., et al., Defendants-
Appellees.**

No. 72–3803.

United States Court of Appeals,
Fifth Circuit.

Aug. 22, 1973.

Otto E. Simon, Mobile, Ala., Howard Schulman, New York City, for plaintiffs-appellants.

Frank B. McRight, Kirk C. Shaw, Mobile, Ala., for Mobile Steamship Assn.

Alex F. Lankford, III, Mobile, Ala., for Malone.

Before GEWIN, THORNBERRY and SIMPSON, Circuit Judges.

THORNBERRY, Circuit Judge:

A group of unions (appellant) representing seamen on American flag vessels asked the district court to enjoin temporarily state court injunction proceedings brought against the union by Mobile Steamship Association, a membership corporation representing shippers and stevedoring companies at the Port of Mobile, and by Alabama soybean farmer Robert E. Malone. The unions charged that appellees used the state court proceedings to block peaceful picketing at the Port of Mobile, thereby violating the unions' first amendment free speech rights and 42 U.S.C. § 1983.[1] The dis-

---

1. Section 1983 provides:
   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other

trict court denied the motion for temporary injunction, and the unions appeal that decision. We conclude the district judge did not abuse his discretion in denying appellants' motion, and therefore we affirm his decision.

The court below published no findings of fact or conclusions of law, but the parties by and large agree on the facts of this case. Some areas of contention do exist, and where they are important we shall describe the parties' differing contentions.

The nub of this case is the unions' dissatisfaction with the wage differential existing between American seamen and their foreign flag counterparts. The unions contend that the substandard wages paid to foreign flag seamen give foreign flag ships a competitive cost advantage over American flag vessels. Since lower costs naturally attract more shipping business, American flag shipping has lost ground to foreign flag shipping and many American seamen consequently have lost their jobs. To counteract this trend the appellant unions launched a nationwide campaign of picketing foreign flag vessels. Typically the pickets peacefully carried signs and handed out literature that described the foreigners' substandard pay and working conditions, the deteriorating state of the U. S. merchant marine, and the importance of a strong merchant marine. The literature further urged the reader not to patronize foreign flag vessels but to utilize the American merchant marine.

As a part of this campaign appellants began picketing all land entrances to the Port of Mobile's Alabama State Docks on November 3, 1971, and subsequently confined their activities to the berths of foreign vessels in port. The picketing effectively shut down the port because foreign vessels composed the largest part of the port's business, and local longshoremen refused to cross the picket lines. The impact of the picketing was unusually strong because it followed on the heels of a longshoremen's strike that had ended only minutes before appellants' picketing began. The prospect of continued inactivity and the accompanying loss of business at the port prompted appellee Mobile Steamship Association to seek a preliminary injunction from the Mobile County Circuit Court on the basis that the picketing had an unlawful purpose under Alabama law.[2] The state court enjoined the picketing without issuing findings or conclusions.

Throughout this dispute the unions have maintained that it belongs in the federal courts. They first attempted to remove the state cause of action; the federal district court remanded the action to state court. Their second attempt at federal adjudication came approximately one year after the state injunction. On November 3, 1972, the unions brought the instant action seeking damages, a permanent injunction, and a preliminary injunction against appellees' further prosecuting their cause in the state court, which in effect would be an injunction against the state court pro-

---

person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

2. Wrongful interference with the business of another is both a criminal act and a tort in Alabama. Title 14, Section 54, Code of Alabama (1940) (Recomp.1959) provides:

Two or more persons who, without a just cause or legal excuse for so doing, enter into any combination, conspiracy, agreement, arrangement, or understanding for the purpose of hindering, delaying or preventing any other persons, firms, corporations, or association of persons from carrying on any lawful business, shall be guilty of a misdemeanor.

The Supreme Court of Alabama has ruled that such behavior is also tortious. *See* Pennington v. Birmingham Baseball Club, Inc., 277 Ala. 336, 170 So.2d 410 (1964), and Sparks v. McCrary, 156 Ala. 382, 47 So. 332 (1908). We express no opinion here as to the validity of this state policy as a ground for enjoining picketing.

ceedings. The district court denied the motion for preliminary injunction, and the requests for damages and permanent injunction remain before that court.

In the meantime appellants have kept alive their state cause of action by appealing to the Alabama Supreme Court. That court ruled against the unions in May 1973,[3] and overruled their rehearing application on July 5, 1973.

Appellants have brought their cause of action in the federal court under 42 U.S.C. § 1983, which gives a cause of action whenever one's federal rights are violated by a person acting under color of state law. The unions claim appellees violated their first amendment rights of free speech by getting an injunction that halts the unions' informational picketing, which is a form of speech. The appellees are acting under color of state law, according to the unions, because they utilized the state courts in their transgression of the unions' first amendment rights. Last, the unions say the doctrine of federal preemption gives primary jurisdiction in this matter to the NLRB and leaves the state court without power to adjudicate.

■■■ At this point we must emphasize that the merits of this case are not before the court. At issue here is simply an appeal from the denial of a preliminary injunction. A preliminary injunction's function is simply to preserve the status quo until the merits can be adjudicated. We test the trial court's decision by asking whether he abused his discretion. Mercury Motor Express v. Brinke, 5th Cir. 1973, 475 F.2d 1086; Exhibitors Poster Exchange, Inc. v. National Screen Service Corporation, 5th Cir. 1971, 441 F.2d 560. See 7 Moore's Federal Practice ¶ 65.04 (2d ed. 1972). The case's merits constituted only one

factor to be weighed by the trial court in determining whether a preliminary injunction should issue. The merits are tested by asking whether the moving party has established a probable right to relief. 7 Moore's Federal Practice ¶ 65.04 (1972). Equally important are irreparable harm to appellants and the balance of harm to all parties.

In regard to the merits we conclude only that appellants' position is not so clearly correct that it would be an abuse of discretion for the trial court to decide they had not proved a probable right to relief. To illustrate, the unions rest heavily on Thornhill v. Alabama, 1940, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093, to maintain that the picketing violates their right to free speech. The Supreme Court, however, restricted *Thornhill* in Teamsters Local 695 v. Vogt, 354 U.S. 284, 77 S.Ct. 1166, 1 L.Ed.2d 1347 (1957), which permits states to prohibit picketing where its purpose is counter to a valid state policy. In the instant case appellants claim the sole purpose was informational, but appellees argue the purpose was to interfere wrongfully with their businesses. Since appellees are neutral third parties in this dispute over seamen's wages and job opportunities, appellants arguably are violating the Alabama state policy against wrongful interference with the business of another. Without a finding of fact in regard to the unions' purpose we cannot say whether appellants' picketing is constitutionally protected free speech or a simple tort.

■■ The preemption issue also will be central to appellants' claim on the merits.[4] The unions argue that this dispute is within the primary jurisdiction of the NLRB and therefore the state court's jurisdiction is preempted. A series of Supreme Court cases[5] has dealt

3. American Radio Association v. Mobile Steamship Association, May 3, 1973, Alabama Supreme Court No. SC 12, 71 L.C. 69,494.

4. The principles of preemption in labor cases are discussed in San Diego Bldg. Trades Council v. Garmon, 1959, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775.

5. Incres Steamship Co. v. International Maritime Workers Unions, 1963, 372 U.S. 24, 83 S.Ct. 611, 9 L.Ed.2d 557; McCulloch v. Sociedad Nacional, 1963, 372 U.S. 10, 83 S.Ct. 671, 9 L.Ed.2d 547; Marine

with the problem of American unions' picketing foreign vessels, and the existence of NLRB jurisdiction appears to hinge on whether the dispute is one "affecting commerce."[6] The dispute does not affect commerce if the picketing's purpose is to pressure the foreign ship's owner for more favorable treatment of his crew. In this case the Alabama Supreme Court found:

> The dispute was either one between the unions and the foreign shipowners to force a raise in the internal standards of those vessels, or one where the intent was to block use of those ships to force Congress to act in the international sphere, which in either case are matters affecting international relations and not properly for NLRB jurisdiction. American Radio Association v. Mobile Steamship Association, 1973, 291 Ala. 201, 279 So.2d 467.

A Texas court of civil appeals reached a contrary conclusion concerning similar picketing by appellants in Windward Shipping (London) v. American Radio Association, 482 S.W.2d 675 (Tex.Civ. App.-Houston [14th Dist.] 1972, no writ) cert. granted, 412 U.S. 927, 93 S. Ct. 2749, 37 L.Ed.2d 154 (1973), and found that the dispute was not focused on improving the foreign seamen's job opportunities by encouraging American business to patronize American shipping. Therefore the court concluded that NLRB jurisdiction preempted the state courts because the dispute affected commerce.

It is undisputed that the unions are dissatisfied with the wage differential existing between them and their foreign counterparts. They are also convinced that this wage differential is costing the American seaman job opportunities. It is not perfectly clear, however, whether they want their picketing to result in a ban on foreign shipping, higher wages for foreign seamen, or simply increased American use of the more expensive American shipping. Their intentions will determine whether the dispute affects commerce and falls within the National Labor Relations Act and the exclusive province of the NLRB. The question is a difficult one, and the U.S. Supreme Court has granted certiorari in the *Windward Shipping* case. We cannot say that it would be an abuse of discretion to decide that appellant is not likely to prevail on to the preemption issue.

■ Even if we assume that appellant has shown a "probable right" to recovery on the merits, it must also be able to show "probable danger that the right may be defeated, unless the injunction is issued." 7 Moore's Federal Practice ¶ 65.04 (1972). For example, if the injunction is not issued the ensuing course of events may moot the controversy or so weaken the plaintiff financially that it cannot continue the litigation. This is a form of the traditional "irreparable injury" that is prerequisite to injunctive relief.

In the present case there is no showing that an injunction is necessary to preserve the unions' cause of action. Their right to recovery is endangered only if we equate danger with the litigation of one's claim in the Alabama state courts. We repeat that the purpose of a preliminary injunction is to preserve one's cause of action until it can be adjudicated properly on the merits. This purpose militates against a preliminary injunction in this case for two reasons. First, appellants' free speech claims have been litigated in the Alabama state courts, and appellants have not shown that their claims received unfair or incompetent treatment. At the time this motion for preliminary injunction was made, appellants had completed litigation in the Mobile County Circuit Court.

---

Cooks & Stewards v. Panama Steamship Co., 1960, 362 U.S. 365, 80 S.Ct. 779, 4 L.Ed.2d 797; and Benz v. Compania Naviera Hidalgo, 1957, 353 U.S. 138, 77 S.Ct. 699, 1 L.Ed.2d 709.

6. *See* 29 U.S.C. § 141, § 152(6), and § 152(7).

**6**

They persistently postponed an appeal of that court's preliminary injunction and finally carried their argument to the Alabama Supreme Court in February 1973, more than a year after the trial court's ruling. That court has now decided against appellants; thus the Alabama courts have already adjudicated this dispute. U.S. Supreme Court review is available if the unions wish to appeal the Alabama Supreme Court decision. The second reason why a preliminary injunction is unnecessary here to preserve the unions' cause of action is that our leaving the state court injunction in force will only temporarily restrict the unions' ability to communicate. Refusing a preliminary injunction will not moot the controversy, injure appellants so severely that they cannot pursue their cause of action, or otherwise hamper their chances for adjudication in the federal courts.

The third element in the successful petition for a preliminary injunction is that "plaintiff is in substantial need of protection and that the damage to him in the absence of an injunction outweighs the foreseeable harm to the defendant . . ." 7 Moore's Federal Practice ¶ 65.04 (1972). In this case the state court injunction deprived the unions of their right to publicize their grievances by picketing in the Port of Mobile. The unions' publicity effort, however, was nationwide (more than twenty states), and the harm from temporarily suspending the picketing in one of those states would seem relatively insubstantial. By contrast appellees alleged that the work stoppage endangered a perishable soybean crop worth $50,000,000. In addition they claimed fixed overhead cost losses of $15,000 per day, vessel demurrage costs of $2,000 to $5,000 per day per vessel, and lost ocean freight revenues of $35,000 per day. They argued further that the

work stoppage virtually closed the port and caused manufacturing plants to curtail production and lay off personnel, thereby damaging severely the economy of the City of Mobile. When we balance the injuries we cannot say the trial judge abused his discretion by letting the state court injunction continue to block union picketing and allow the port to function until the case could be heard on the merits.

■ The foregoing discussion has shown that appellant must meet the three traditional requirements for a preliminary injunction in a manner that would indicate the trial judge abused his discretion in refusing relief. Because he seeks to enjoin proceedings in a state court he must meet an additional requirement. He must show that federal intervention in this case would be justified despite the principles of equity, comity and federalism.

In the Anti-Injunction Act, 28 U.S.C. § 2283,[7] Congress expressed a strong preference to avoid federal intervention in pending state proceedings. The Supreme Court later supported the statute by holding that "any injunction against state court proceedings otherwise proper under general equitable principles must be based on one of the specific statutory exceptions to § 2283 if it is to be upheld. . . ." Atlantic Coast Line Railroad v. Brotherhood of Locomotive Engineers, 398 U.S. 281, 287, 90 S.Ct. 1739, 1743, 26 L.Ed.2d 234 (1970). Then in Mitchum v. Foster, 1972, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705, the Court held that § 1983 was just such an exception to the Anti-Injunction Act.

Mitchum v. Foster makes possible appellant's instant § 1983 action in the federal courts; it does not approve unlimited federal intervention in pending state court proceedings. After the Court found § 1983 to be an exception to

7. Section 2283 provides:
   A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.
   28 U.S.C. § 2283.

the Anti-Injunction Act it added a caveat.

> . . . we do not question or qualify in any way the principles of equity, comity, and federalism that must restrain a federal court when asked to enjoin a state court proceeding.

92 S.Ct. at 2162.

In regard to the principles of equity, we have already discussed the prerequisites that must be met before equity will grant an injunction. We concluded that appellant has failed to demonstrate that it will suffer irreparable harm if the preliminary injunction is not granted and that our injunction would damage appellees substantially more than our refusal to enjoin would harm the unions.

Application of the principles of comity and federalism also leads us to conclude that federal intervention is not warranted in this case. The Supreme Court has defined these principles as

> . . . a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways. Younger v. Harris, 1971, 401 U.S. 37, 44, 91 S.Ct. 746, 750, 27 L.Ed. 2d 669.

 Thus the concepts of comity and federalism teach that we should be hesitant to enjoin state court proceedings, for such injunctions create federal-state friction and inject delays, duplication and added expense into the litigation process. The principles of equity require a showing of irreparable harm to justify federal intervention. *See* Cousins v. Wigoda, 7th Cir. 1972, 463 F.2d 603, application for stay denied, 1972, 409 U.S. 1201, 92 S.Ct. 2610, 34 L.Ed.2d 15 (Rehnquist, Circuit Justice). Since a showing of irreparable harm is absent here, the trial court was well within its discretion to deny the preliminary injunction.

Viewed in terms of the traditional prerequisites for a preliminary injunction and the reticence engendered by the principles of "equity, comity and federalism", we find the trial court did not abuse its discretion in refusing the appellants' request for a preliminary injunction.

Affirmed.