Rel: May 17, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2023-2024

_____

### SC-2023-0657
_____

**City of Orange Beach**

**v.**

**The Lamar Companies**

**Appeal from Baldwin Circuit Court**
**(CV-07-900924 and CV-09-901011)**

MENDHEIM, Justice.

The City of Orange Beach ("Orange Beach") appeals from the

Baldwin Circuit Court's order denying Orange Beach's motion to enforce

consent decrees that declared the settlement terms of a dispute between Orange Beach and The Lamar Companies ("Lamar"). We reverse the circuit court's order.

## I. Facts

In 1991, Orange Beach adopted a zoning ordinance pertaining to "off-premises" signs within its jurisdiction ("the zoning ordinance"). Before the adoption of the zoning ordinance, Lamar had constructed and erected four billboard signs along the beach highway in Orange Beach. Section 15.0403 of the zoning ordinance provides that signs erected before the adoption of the zoning ordinance are deemed to be "nonconforming signs" and that

> "[a] non-conforming sign may be maintained only by painting or refinishing the surface of the sign face or sign structure so as to keep the appearance of the sign as it was when the prior permit was issued or the City permit tag affixed. Upon a determination by the administrator and notice to the permittee that a nonconforming sign has become dilapidated or structurally unsound, such sign shall be moved within 20 days unless an appeal of such determination has been previously filed with the Board of Adjustment. Any structural or other substantive maintenance of the nonconforming sign shall be deemed an abandonment of the nonconforming sign and shall render the prior permit void and shall result in the reclassification of such sign as an illegal sign pursuant to Section 15.0401."

2

On September 24, 2007, Orange Beach Inspector Chuck Smith determined that the four Lamar billboards were in a dilapidated condition and recommended that Orange Beach order Lamar to remove the billboards because they did not comply with the zoning ordinance. Orange Beach subsequently sent letters to Lamar informing it that the four billboards did not comply with the zoning ordinance and that Lamar was required to remove them.

On October 12, 2007, Lamar appealed to the Board of Adjustment of the City of Orange Beach the determination that the four billboards did not comply with the zoning ordinance. In its appeal, Lamar both challenged Orange Beach's determination that Lamar had not followed the zoning ordinance's requirements for nonconforming signs and requested a variance from the zoning ordinance, pursuant to § 11-52-80(d)(3), Ala. Code 1975, because, it said, application of the zoning ordinance would result in "unnecessary hardship."[1] On November 19, 2007, the Board of Adjustment considered and denied Lamar's appeal.

---

[1]Section 11-52-80(d)(3), Ala. Code 1975, authorizes a board of adjustment

"[t]o authorize upon appeal in specific cases such variance from the terms of the ordinance as will not be contrary to the

3

On November 27, 2007, Lamar appealed the Board of Adjustment's decision to the Baldwin Circuit Court, and the appeal was assigned to Circuit Judge J. Langford Floyd. In its amended complaint filed on August 18, 2008, Lamar asserted claims contending, among other things, that Section 15.0403 of the zoning ordinance: (1) violates the Alabama Constitution in that it is "void for vagueness and grant[s] unfettered discretion to [Orange Beach] officials to license speech"; (2) "violates the Alabama Constitution's due process guarantees" because it uses ambiguous terms; and (3) "deprives Lamar of equal protection" because it "favors the speech of certain groups and organizations while prohibiting speech by other entities that would be no more detrimental to any legitimate governmental interest" and because Orange Beach was "clearly selectively enforcing the [Zoning] Ordinance against Lamar."

On August 28, 2009, Lamar commenced a separate action against Orange Beach in the Baldwin Circuit Court, which was assigned to Circuit Judge Robert E. Wilters, that alleged nearly identical claims to

---

public interest, where, owing to special conditions, a literal enforcement of the provisions of the ordinance will result in unnecessary hardship and so that the spirit of the ordinance shall be observed and substantial justice done."

those asserted in their appeal of the Board of Adjustment's decision, including allegations of free-speech, equal-protection, and due-process violations related to Orange Beach's alleged selective enforcement of the zoning ordinance.[2] On September 1, 2009, Lamar moved to consolidate the two actions, and on September 16, 2009, Judge Floyd entered an order consolidating the two actions. On September 29, 2009, Orange Beach filed a "Motion to Vacate and Rescind Order of Consolidation." On October 20, 2009, Judge Floyd granted Orange Beach's motion and returned the separate action to Judge Wilters.

On June 3, 2010, Judge Wilters ordered the parties to mediate their dispute. On June 16, 2010, Judge Floyd ordered the parties to mediate their dispute in the appeal from the Board of Adjustment's decision together with the already initiated mediation of the dispute in Lamar's separate action. The mediation was successful, and the parties reached a

---

[2]In a subsequent filing, Lamar asserted that its reason for commencing the separate action was that in June 2009 it had submitted to Orange Beach permit applications for constructing and erecting new billboards, but that in July 2009 Orange Beach had denied those applications despite having permitted similar signs constructed and erected by a different company.

5

settlement agreement that encompassed both Lamar's appeal from the Board of Adjustment's decision and Lamar's separate action.

On March 24, 2011, Judge Floyd entered an order explaining the settlement agreement. That order stated:

> "The parties, The Lamar Companies, the City of Orange Beach, Alabama and the City of Orange Beach Board of Adjustment, were previously ordered by this Court to attend a joint mediation to see if the issues raised in [the separate action] and [the appeal of the Board of Adjustment's decision] could be resolved. The parties have favorably reported to the Court that they have reached an agreement. Pursuant to that representation, the Court hereby ORDERS, ADJUDGES, and DECREES:
>
> "1. This Court will assert jurisdiction over both the 2009 and 2007 cases for purpose of entering this Consent Decree.
>
> "2. In 1991, the City of Orange Beach adopted a zoning ordinance prohibiting off-premise signs within [Orange Beach]. [Lamar] currently [has] four off-premise signs within [Orange Beach] as depicted in the attached aerial map as A, B, C, and D. The signs are deemed non-conforming under the zoning ordinance because they pre-existed the 1991 ban on such signs.
>
> "3. The parties' dispute centers on whether the four non-conforming signs are dilapidated or structurally unsound, and as such, subject to removal under the terms of the zoning ordinance. To resolve these cases, the parties agree and the court orders as follows:
>
> > "(a) The three signs identified as A, B, and D on the attached aerial map will be removed not later than 60 days from the date of this order, and

6

shall not be replaced. Lamar will remove all debris and trash associated with the removal.

"(b) <u>The sign identified as 'C'</u> on the attached aerial map and located on tax parcel # 66-06-13-3-001-043.000, owned by Annette B. Little and currently leased to Lamar, <u>may remain on such site as a non-conforming sign so long as it complies with the terms of this order, but must be removed not later than twelve years from the date of the sign permit issued pursuant to subparagraph (c) below</u>.

"(c) Upon submittal of properly completed application(s), [Orange Beach] agrees to issue such permits to Lamar within 60 days as may be necessary to modify sign C as follows:

"(1) the monopole, header and sign face may be replaced with a new support and header and one 10' 6" x 36' trivision mechanical sign board, one on each side, for a total of two, replacement sign faces;

"(2) the replacement sign will be externally illuminated. Under no circumstances will any digital or internal illumination be allowed.

"(d) During the twelve year period as defined in subpart (b) above, Lamar will maintain the property immediately surrounding the circumference of the sign, keeping it free of debris, trash and overgrown grass, and otherwise comply with [Orange Beach's] ordinances concerning the regulation of signs, including inspections and permitting. Lamar shall perform no work on the

sign other than routine maintenance to the trivision mechanisms and interchange of copy without first obtaining a permit.

"4. In the event Lamar fails to comply with any of the terms of this decree, upon application of [Orange Beach], this Court will order the immediate removal of the nonconforming sign with no further hearings.

"5. The remaining claims contained in the above-styled cases are due to be dismissed with prejudice, each party to bear its own costs."

(Emphasis added.) On April 12, 2011, Judge Wilters entered an identical order in the separate action.[3] The orders entered by Judge Floyd and Judge Wilters are referred to collectively as "the consent decrees."

On April 8, 2011, in accordance with the consent decrees, Orange Beach granted Lamar's permit application for Billboard C. The permit referenced the consent decrees and quoted the portion of them that stated that Billboard C was to "remain on … site as a non-conforming sign so long as it complies with the terms of this order, but must be removed not later than twelve years from the date of the sign permit issued."

---

[3]The only difference between the two orders was that Judge Floyd's order was titled "Order" while Judge Wilters's order was titled "Consent Decree."

On March 14, 2023, Orange Beach sent Lamar a letter reminding Lamar of the consent decrees' terms concerning Billboard C and stating that the billboard "must be removed on or before April 8, 2023. Failure to do so will result in further legal action." Lamar did not respond to Orange Beach's March 14, 2023, letter. The 12-year period for Billboard C's display under the consent decrees expired on April 8, 2023. It is undisputed that Lamar continued to operate and maintain Billboard C after that date. On April 14, 2023, Orange Beach sent Lamar another letter that reiterated the consent decrees' terms concerning Billboard C, which stated in part that "[t]his letter serves as final notice to remove the sign and all debris therefrom immediately. If proper removal is not completed within 14 days, [Orange Beach] will move forward with legal action and/or remove the sign." Lamar did not respond to Orange Beach's April 14, 2023, letter.

On May 3, 2023, Lamar filed in the Baldwin Circuit Court under the case number assigned to its appeal from the Board of Adjustment's decision a "Motion to Enjoin" Orange Beach "from requiring the removal

of [Billboard C] and/or enjoining [Orange Beach] from removing [Billboard C]."[4] In that motion, Lamar contended:

"3. Since the date[s] of the [consent decrees] there has been a material change in the circumstances surrounding [Orange Beach's] enforcement, or selective enforcement, of its [zoning] ordinance, Article 15, … as to off-premises and on-premises advertising signs. [Orange Beach] has selectively enforced its [zoning] ordinance as to Lamar's sign at issue but has failed to enforce its [zoning] ordinance as to several other advertising signs throughout [Orange Beach], which are non-conforming and remain in place.

"4. [Orange Beach's] selective enforcement of its [zoning] ordinance as to Lamar and to the exclusion of others similarly situated has been intentional and unequal and is a deviation from the ordinance.

"5. Lamar has a constitutional right to conduct off-premises advertising and [Orange Beach's] selective enforcement of its [zoning] ordinance is intended to prevent that right while numerous similarly situated persons or entities that operate off-premises advertising signs in [Orange Beach] have not been prosecuted."

---

[4]Lamar's "Motion to Enjoin" asserted that the consent decrees "would allow Lamar's non-conforming digital off-premises advertising sign to remain in place until April 30, 2023." It is not clear from the record or the parties' briefs why Lamar believed that the deadline for removing Billboard C was April 30, 2023, rather than April 8, 2023. However, the difference is immaterial because Lamar has acknowledged that it did not remove Billboard C before either date and, indeed, that it still has not done so.

Based on the foregoing contentions, Lamar sought a judgment declaring that Article 15 of the zoning ordinance was unconstitutional under Alabama's Constitution, preliminary and permanent injunctive relief enjoining Orange Beach from enforcing its zoning ordinance with respect to Billboard C, and "any further and additional relief that the Court should deem appropriate."

On June 12, 2023, Orange Beach filed a "Motion to Enforce Judgment and for Finding of Contempt" under both the case number assigned to the separate action and the case number assigned to Lamar's appeal from the Board of Adjustment's decision. In that motion, Orange Beach requested that the circuit court order the removal of Billboard C pursuant to the consent decrees and sought a finding of civil contempt against Lamar and an award of attorney fees to Orange Beach as a sanction for Lamar's alleged violation of the consent decrees. Orange Beach contended in its motion to enforce the consent decrees that, because the parties' settlement agreement had been incorporated into a court order, it was "res judicata as to any claims that Lamar otherwise may have had" and that "Lamar affirmatively waived any irregularities associated" with the consent decrees. In support of its motion to enforce

11

the consent decrees, Orange Beach filed several evidentiary submissions, including an affidavit from Orange Beach Director of Community Development Kit Alexander, who testified to having attended the settlement discussions between the parties, described Orange Beach's interpretation of the consent decrees, and related that Billboard C "remains standing to this very day in blatant violation of this Court's direct orders."[5] On the same date, Orange Beach filed in both case numbers a response in opposition to Lamar's "Motion to Enjoin" the removal of Billboard C that reiterated and expanded upon the arguments contained in Orange Beach's motion to enforce the consent decrees, including its contention that the claims asserted by Lamar in its "Motion to Enjoin" were barred by the doctrine of res judicata. Orange Beach also argued:

> "Lamar's 'Motion to Enforce' reads as though it is a new lawsuit, but [it was] filed in the same case, without payment of a new filing fee. The Motion even includes a purported claim for a 'declaratory judgment' under which it requests new relief from this Court despite the entry of a final judgment twelve years ago. This is improper. These cases were dismissed with prejudice on March 24, 2011, and April 12, 2011, when the Consent Decrees were entered. The matter cannot be 're-opened' through the filing of a motion 'to enjoin'

---

[5]Pictures supporting Alexander's testimony that Billboard C remained in place were attached to Alexander's affidavit.

12

or prayer for declaratory relief -- because it was <u>finally settled</u> twelve years ago. That is doubly true given that the Motion to Enjoin purports to allege new acts or omissions by [Orange Beach], which[,] again, allegedly post-date the settlement in <u>this</u> case and have no bearing upon it."

On August 25, 2023, the circuit court -- Judge J. Clark Stankoski presiding -- held a hearing concerning Orange Beach's motion to enforce the consent decrees. On the same date, the circuit court entered an order denying Orange Beach's motion to enforce the consent decrees. The order did not explain Judge Stankoski's reasons for denying the motion. On September 8, 2023, Orange Beach appealed the circuit court's order.

## II. Standard of Review

In reviewing the circuit court's denial of Orange Beach's motion to enforce the consent decrees, we apply a de novo standard of review. See, e.g., <u>Ingenuity Int'l, LLC v. Smith</u>, [Ms. SC-2022-0501, June 16, 2023] __ So. 3d __, __ (Ala. 2023) (stating that "we [will] apply the standard of review that applies to a permanent injunction enforcing a settlement agreement, which is de novo"); <u>McIver v. Bondy's Ford, Inc.</u>, 916 So. 2d 616, 619 (Ala. Civ. App. 2005) ("Because the trial court did not receive ore tenus evidence as to the alleged settlement agreement, we review the judgment without a presumption of correctness.").

13

### III. Analysis

### A. Lamar's Motion to Dismiss the Appeal

Before we address the substance of Orange Beach's appeal, we note that Lamar has filed a motion to dismiss the appeal. Lamar contends that Orange Beach has not appealed from a final judgment because its own "Motion to Enjoin" Orange Beach "from requiring the removal of [Billboard C] and/or enjoining [Orange Beach] from removing [Billboard C]" remains pending before the circuit court and, Lamar asserts, that motion is intertwined with Orange Beach's motion to enforce the consent decrees. Lamar observes that "[a] final judgment that will support an appeal is one that puts an end to the proceedings between the parties to a case and leaves nothing for further adjudication" and that, "[w]ithout a final judgment, this Court is without jurisdiction to hear an appeal." Ex parte Wharfhouse Rest. & Oyster Bar, Inc., 796 So. 2d 316, 320 (Ala. 2001).

Orange Beach counters that its motion to enforce the consent decrees sought injunctive relief, citing Kappa Sigma Fraternity v. Price-Williams, 40 So. 3d 683 (Ala. 2009), and Lem Harris Rainwater Family Trust v. Rainwater, 344 So. 3d 331 (Ala. 2021), in support of that

proposition, and so, Orange Beach argues, under Rule 4(a)(1)(A), Ala. R. App. P., the circuit court's order was appealable within 14 days of the date of the circuit court's order. In <u>Kappa Sigma Fraternity</u>, this Court concluded that a trial court's order commanding a party to pay settlement proceeds to another party was "injunctive in nature." 40 So. 3d at 690. In <u>Rainwater</u>, this Court, relying on <u>Kappa Sigma Fraternity</u>, concluded that a trial court's order "directing the parties to comply with the settlement agreement" "was injunctive in nature -- because it commanded the parties to take specific action." 344 So. 3d at 334, 335.

Lamar does not deny the holdings in <u>Rainwater</u> and <u>Kappa Sigma Fraternity</u>. Instead, Lamar seeks to distinguish those decisions, arguing that in those cases this Court

> "held that appeals can be taken from interlocutory orders <u>granting</u> injunction. … In this case, the [circuit court's] order denying [Orange Beach's] Motion to Enforce Judgment and for Finding Contempt … is not the denial of an injunction and not an injunctive order as it does not command either party to take a specific action nor does it prevent either party from taking a specific action. <u>See</u> <u>Dawkins v. Walker</u>, 794 So. 2d 333, 335 (Ala. 2001) ('An injunction is defined as "[a] court order commanding or preventing an action." <u>Black's Law Dictionary</u> 788 (7th ed. 1999).')."

Lamar's Motion to Dismiss, p. 5; see also Lamar's brief, pp. 10-11 (repeating verbatim the same argument).

15

As Orange Beach notes, however, Lamar's manner of distinguishing <u>Rainwater</u> and <u>Kappa Sigma Fraternity</u> makes no sense given that Rule 4(a)(1)(A) expressly provides for the appeal of "any interlocutory order granting, continuing modifying, <u>refusing</u>, or dissolving an injunction, or refusing to dissolve or to modify an injunction." (Emphasis added.) Thus, it is immaterial that in <u>Rainwater</u> and <u>Kappa Sigma Fraternity</u> the trial courts were <u>granting</u> injunctive relief rather than <u>refusing</u> such relief as in this case. The circuit court's August 25, 2023, order denying Orange Beach's motion to enforce the consent decrees constituted a refusal to require Lamar to remove Billboard C from the beach highway, i.e., refusing to require Lamar to take a specific action. It was clearly an order "refusing … an injunction." Rule 4(a)(1)(A). Orange Beach appealed from the August 25, 2023, order within 14 days of the entry of the order; therefore, we have jurisdiction to consider Orange Beach's appeal under Rule 4(a)(1)(A).

<u>B. The Circuit Court's Denial of Orange Beach's Motion to Enforce the Consent Decrees</u>

Orange Beach contends that the circuit court erred by not granting its motion to enforce the consent decrees because the consent decrees' terms were unequivocal that Billboard C had to be removed 12 years after

the date the permit for it was issued and it is undisputed that Lamar has not removed Billboard C even though the 12-year term has expired. The consent decrees expressly stated, in relevant part:

> "(b) The sign identified as 'C' … may remain on such site as a non-conforming sign so long as it complies with the terms of this order, but must be removed not later than twelve years from the date of the sign permit issued pursuant to subparagraph (c) below.
>
> "....
>
> "4. In the event Lamar fails to comply with any of the terms of this decree, upon application of [Orange Beach], this Court will order the immediate removal of the nonconforming sign with no further hearings."

(Emphasis added.) Orange Beach issued the permit for Billboard C on April 8, 2011. It is undisputed that Lamar did not remove Billboard C by April 8, 2023, and that it still has not removed Billboard C during the pendency of this litigation.

Orange Beach notes that this Court has stated that a consent decree "'"must be 'regarded as in the nature of a contract or binding obligation between the parties thereto.'"'" Phoenix East Ass'n v. Perdido Dunes Tower, LLC, 295 So. 3d 1016, 1026 (Ala. 2019) (quoting Mudd v. Lanier, 247 Ala. 363, 372, 24 So. 2d 550, 558 (1945), quoting in turn

17

Garrett v. Davis, 216 Ala. 74, 76, 112 So. 342, 343 (1927), quoting in turn Cowley v. Farrow, 193 Ala. 381, 384, 69 So. 114, 115 (1915)). Further, a consent decree "'is an agreement that the parties desire and expect will be reflected in, and be enforceable as, a judicial decree that is subject to the rules generally applicable to other judgments and decrees.'" Austin v. Alabama Check Cashers Ass'n, 936 So. 2d 1014, 1038 (Ala. 2005) (quoting Rufo v. Inmates of Suffolk Cnty. Jail, 502 U.S. 367, 378 (1992)). See also Mays v. Julian LeCraw & Co., 807 So. 2d 551, 554 (Ala. Civ. App. 2001) (stating that "[a] settlement agreement entered into between the parties is binding and will be summarily enforced"). Moreover, the consent decrees were orders of the circuit court, and "a trial court has residual jurisdiction to enforce its judgments." Gulf Beach Hotel, Inc. v. Gulf State Park Auth., 58 So. 3d 727, 730 (Ala. 2010). See also Ingenuity Int'l, LLC, __ So. 3d at __ (observing that a "circuit court [has] general authority to enforce settlement agreements. See Kappa Sigma, 40 So. 3d at 696 (Murdock, J., concurring in rationale in part and concurring in result) ('[A] trial court exercises inherent power to [enforce a settlement agreement] based on the fact that the agreement has been made before the court.')."); Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S.

375, 381 (1994) (concluding that a federal district court lacked ancillary jurisdiction to address the claims at issue, but noting that "[t]he situation would be quite different if the parties' obligation to comply with the terms of the settlement agreement had been made part of the order of dismissal … by incorporating the terms of the settlement agreement in the order. In that event, a breach of the agreement would be a violation of the order, and ancillary jurisdiction to enforce the agreement would therefore exist.").

Lamar does not deny any of the foregoing points of law. Rather, it asserts:

> "During the mediation, it was represented to Lamar that the City of Orange Beach does not, and would not, allow off premises advertising within [Orange Beach]. The City of Orange Beach [Zoning Ordinance] specifically prohibit[s] off premises advertising signs, except off premise signs for non-profit organization special events. (Ordinance at 15.06). Lamar agreed to the Consent [Decrees] and agreed to the removal of billboards A, B, and D based on [Orange Beach's] assurance that it would not allow digital signage or off premises advertising signs in the future and so that billboard C was the last remaining off premises advertising sign within [Orange Beach]. Despite that assurance, subsequently [Orange Beach] allowed multiple off premises signs and digital signs. While [Orange Beach] was demanding that Lamar remove its off premises sign pursuant to the Consent [Decrees], [Orange Beach] was and is allowing numerous off premises advertising signs to operate throughout [Orange Beach]."

19

Lamar's brief, pp. 2-3. In other words, Lamar argues that Orange Beach's alleged "selective enforcement" of its zoning ordinance entitles Lamar not to comply with the consent decrees.

There are numerous problems with Lamar's argument. First, the consent decrees do not say anything about a possibility that future so-called "selective enforcement" of Orange Beach's zoning ordinance could warrant Billboard C remaining on display past the 12-year period stated in the consent decrees and declared by the permit for Billboard C. "A settlement agreement is a contract." Lem Harris Rainwater Fam. Tr. v. Rainwater, 373 So. 3d 1089, 1093 (Ala. 2022). "Rules applicable to the construction and interpretation of contracts are applicable to the construction and interpretation of judgments. Thus, in construing a consent judgment, the intention of the parties derived from the judgment itself controls if its language is plain and unambiguous." Hanson v. Hearn, 521 So. 2d 953, 954-55 (Ala. 1988). The language of the consent decrees is plain and unambiguous: it states that Billboard C could remain on site for 12 years but that it "must be removed not later than twelve years from the date of the sign permit issued …." Lamar's argument that it agreed to the terms of the consent decrees only because of Orange

Beach's representations about future enforcement of the zoning ordinance with respect to off-premises advertising is not reflected in the provisions of the consent decrees, which dictate the stated intentions of the parties. Because Lamar's argument is not grounded in the language of the consent decrees, it does not constitute a basis for refusing to enforce the terms of the consent decrees with respect to Billboard C.

Second, as we related in Part I of this opinion, Lamar asserted allegations of selective enforcement of the zoning ordinance against Orange Beach in both its 2007 appeal from the Board of Adjustment's decision and in its 2009 separate action against Orange Beach. In the consent decrees, Lamar settled its disputes with Orange Beach. In doing so, Lamar waived its right to assert its then-pending selective-enforcement claims against Orange Beach. Indeed, the consent decrees expressly stated that "[t]he remaining claims contained in the above-styled cases are due to be dismissed with prejudice …." "A consent judgment acts as a final settlement of the claims raised, and under such a judgment the parties waive errors and irregularities, absent fraud or mistake." Winston Cnty. Sch. Bd. v. Haleyville City Sch. Bd., 738 So. 2d 886, 890 (Ala. 1999). Lamar was aware of Orange Beach's alleged

21

selective enforcement of the zoning ordinance at the time it entered into the settlement agreement and stipulated to the terms of the consent decrees. Therefore, Lamar's previous allegations of selective enforcement are not a basis for refusing to enforce the terms of the consent decrees.

Third, Lamar's "Motion to Enjoin" clearly raises new allegations of selective enforcement of the zoning ordinance that it says have occurred "[s]ince the date[s] of the [consent decrees]." Lamar's motion couched those new allegations as "a material change in circumstances surrounding [Orange Beach's] enforcement, or selective enforcement, of its [zoning] ordinance, Article 15, … as to off-premises and on-premises advertising signs." Lamar's new claims do not seek to enforce the consent decrees but, rather, seek to challenge Orange Beach's current manner of enforcing the zoning ordinance. The assertion of such new claims requires the commencement of a new action. See, e.g., Ex parte Caremark Rx, LLC, 229 So. 3d 751, 760 (Ala. 2017) (finding that "[t]he jurisdiction retained by the trial court after it entered its final judgment … is limited to interpreting or enforcing that final judgment"); Gulf Beach Hotel, 58 So. 3d at 731 (concluding that "[b]ecause [the plaintiff] did not seek enforcement of the June 26, 2008, judgment, the trial court did not have

retained or residual jurisdiction to consider the amended complaint" and that the claims "should, therefore, have been asserted in a new action …."); <u>Rowland v. Tucker</u>, 286 So. 3d 713, 724-25 (Ala. Civ. App. 2019) (holding that: (1) "the present case does not concern whether the May 2008 judgment can or should be enforced"; (2) a motion filed subsequent to the judgment "should have been treated as a new action"; and (3) the failure of the party who filed the motion "to pay the required filing fee in conjunction with the commencement of the action resulted in a failure to invoke the jurisdiction of the circuit court").[6] Lamar has neither commenced a new action nor paid a filing fee for such an action. Therefore, the new claims asserted in Lamar's "Motion to Enjoin" do not constitute a basis for refusing to enforce the terms of the consent decrees.

---

[6]Lamar argues that because its "claim that [Orange Beach] is selectively enforcing its [zoning ordinance] was raised in both its 2007 Complaint and 2009 Complaint, … the trial court retained jurisdiction" to consider Lamar's new selective-enforcement claims. Lamar's brief, p. 3. But, as we already have observed, the consent decrees expressly dismissed with prejudice all claims asserted in Lamar's 2007 appeal from the Board of Adjustment's decision and Lamar's 2009 separate action. Thus, the circuit court did not retain jurisdiction to consider any selective-enforcement claims, let alone claims based on actions that occurred after the entry of the consent decrees.

For the foregoing reasons, we conclude that the circuit court erred by refusing to enforce the consent decrees. It is undisputed that Lamar has not removed Billboard C from its location even though more than 12 years have transpired since the permit for Billboard C was issued by Orange Beach. The consent decrees clearly state that, "[i]n the event Lamar fails to comply with any of the terms of this decree, upon application of [Orange Beach], this Court will order the immediate removal of the nonconforming sign with no further hearings." Thus, upon Orange Beach's filing of its motion to enforce the consent decrees, the circuit court should have ordered Lamar to remove Billboard C. Accordingly, the circuit court's order is due to be reversed.

## IV. Conclusion

Orange Beach's appeal was appropriate and timely under Rule 4(a)(1)(A), Ala. R. App. P., and so, by separate order, we deny Lamar's motion to dismiss the appeal. Furthermore, it is undisputed that Lamar violated the terms of the consent decrees by failing to remove Billboard C within the period specified in the consent decrees, and none of the reasons offered by Lamar for that failure constitute a legitimate legal basis for not enforcing the terms of the consent decrees. Therefore, we

24

reverse the circuit court's order denying Orange Beach's motion to enforce the consent decrees, and we remand the action for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

Parker, C.J., and Shaw, Bryan, and Mitchell, JJ., concur.